**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
CHUFEN CHEN,
ELIE EVANSON,
SHERRY L JOHNSON,
DAVID A BUCHOLTZ, and
MICHELLE BEATTIE,
*on behalf of themselves and others similarly situated*

        **Case No: 17-cv-03808**

               Plaintiffs,

        v.

DUNKIN' BRANDS, INC (a Delaware Corporation)
      d/b/a Dunkin' Donuts;
               Defendant.
-------------------------------------------------------------x

---

## NATIONWIDE CLASS ACTION

## FIRST AMENDED COMPLAINT

## JURY TRIAL DEMANDED

---

TROY LAW, PLLC
*Attorneys for the Plaintiffs, and proposed Rule 23 Class*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:    (718) 762-1324

Plaintiffs CHUFEN CHEN, ELIE EVANSON, SHERRY L JOHNSON, DAVID A BUCHOLTZ, and MICHELLE BEATTIE (hereinafter referred to as "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this complaint against Defendant DUNKIN' BRANDS, INC. d/b/a Dunkin' Donuts, a Delaware Corporation (hereinafter "Defendant").

## INTRODUCTION

1. This action is brought by Plaintiffs, on behalf of themselves and on behalf of proposed class (the "Class"), as more fully defined below, of similarly situated consumers throughout the United States to redress the pervasive pattern of fraudulent, deceptive and otherwise improper advertising, sales, and marketing practices that Defendant continues to engage of the following products (hereinafter "Products") throughout the State of New York and throughout the country:

    a. "Angus Steak and Egg Sandwich", including on Plain Bagel, Croissant, English Muffin, Multigrain Flatbread, and Texas Toast (hereinafter "Angus Steak and Egg Sandwich");

    b. "Angus Steak and Egg Snack N' Go Wrap", also known as the "Angus Steak and Egg Wrap", and formerly known as the "Angus Steak and Egg Wake-Up Wrap" (hereinafter "Angus Steak and Egg Wrap").

2. Defendant's advertising and marketing campaign is false, deceptive and misleading because its "Angus Steak" is not "steak", an intact (not grounded) beef product, but a non-intact (grounded) beef patty, an inferior product of comminuted beef which in addition to beef contains additives, binders (extenders and fillers), added water,

added fat and preservatives.

3. Plaintiffs and other similarly situated members ("Class Members") relied on Defendants' misrepresentations that its Products are in fact Angus Steak and Egg Sandwich <u>&</u> Angus Steak and Egg Wrap when purchasing the products.

4. Plaintiffs and Class Members paid a premium for the Products over and above comparable products—its "Classic Egg and Cheese (with Ham, Bacon, or Sausage)" sandwich and its "Classic Egg and Cheese (with Ham, Bacon, or Sausage)" wrap that did not purport to include "Angus steak."

5. Given that Plaintiffs and Class Members paid a premium for the Products based on Defendants' misrepresentations that they in fact include "Angus Steak," Plaintiffs and Class Members suffered an injury in the amount of premium paid.

6. As more fully alleged herein, Defendant's schemes or artifices to defraud Plaintiffs and other members of the proposed Class consist of systemic and continuing practices of disseminating false and misleading information via television commercials, the Internet, point of purchase advertisements and national print advertisements, all of which are intended to trick unsuspecting consumers, including Plaintiffs and other members of the proposed Class, into believing that they are purchasing Angus Steak and Egg Sandwich <u>&</u> Angus Steak and Egg Wrap when in fact they were purchasing an inferior product, Angus Beef Patty and Egg Sandwich and Angus Beef Patty and Egg wrap.

7. Each person who has purchased Defendants' Product, including the Plaintiffs, has been exposed to Defendant's misleading advertising message and purchased the Product as a result of that advertising.

8.  Plaintiffs bring this action on behalf of herself and other similarly situated consumers throughout the United States to halt the dissemination of these false and misleading advertising messages, correct the false and misleading perception that they have created in the minds of consumers, and obtain redress for those who have purchased the Product.

9.  Plaintiffs allege violations of the consumer fraud statutes of all fifty (50) states and the District of Columbia, as well as unjust enrichment under the laws of all fifty (50) states and the District of Columbia.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act. The proposed Class involves more than 100 individuals. A member of the proposed Class is a citizen of a state different from the Defendant, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs. A member of the proposed Class is a citizen of a state different from the Defendant, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs.

11. Venue is proper in this district under 28 U.S.C. §1391, because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## PLAINTIFFS

12. Plaintiff CHUFEN CHEN is, and at all times relevant to this action has been, a resident and citizen of New York.

13. Plaintiff ELIE EVANSON is, and at all times relevant to this action has been, a resident and citizen of Massachusetts.

14. Plaintiff SHERRY L JOHNSON is, and at all times relevant to this action has been, a resident and citizen of Florida.

15. Plaintiff DAVID A BUCHOLTZ is, and at all times relevant to this action has been, a resident and citizen of Michigan.

16. Plaintiff MICHELLE BEATTIE is, and at all times relevant to this action has been, a resident and citizen of California.

## **DEFENDANTS**

*Corporate Defendant*

17. Corporate Defendant DUNKIN' BRANDS, INC. d/b/a Dunkin' Donuts is a domestic business corporation organized under the laws of the State of Delaware with a registered address at 1209 Orange Street, Wilmington DE 19801.

18. Defendant's Dunkin' Donuts brand franchise, with more than 19,000 points of distribution and more than 11,500 restaurants worldwide, is one of the largest retail chains in the United States.

19. Although Dunkin' Donut points of distribution and retail stores are owned and/or operated by franchisees, Defendant creates, maintains and enforces strict uniform standards and practices for all aspects of its Dunkin' Donut distribution sites, including its food offerings and prices.

20. Defendant's actions were intended to and did lead Plaintiffs and members of the proposed Class to believe that all Dunkin' Donuts retail stores had substantial similar standards and practices, and that all Product would be substantially same at each

Dunkin' Donut point of distribution.

21. Plaintiffs, and members of the nationwide Class justifiably relied on Defendant's representations that the Product would be identical in all material respects at each point of distribution.

## STATEMENT OF FACTS

22. Angus Steak & Egg Breakfast Sandwich and Angus Steak & Egg Wake-Up Wrap are registered trademarks of Defendant DUNKIN' BRANDS, INC. d/b/a Dunkin' Donuts, a Delaware Corporation, and Defendant DUNKIN' BRANDS, INC. d/b/a Dunkin' Donuts, a Delaware Corporation grants licenses to franchisees to operate the Dunkin' Donut in the United States.

23. Whether Defendant's DUNKIN' BRANDS, INC. d/b/a Dunkin' Donuts, a Delaware Corporation labeling of the Products as angus "steak" is deceptive is judged by whether it would deceive or mislead a reasonable person.

24. A reasonable person would not have thought that an unqualified "steak" is a non-intact, grounded meat with substantial non-meat content.

25. Furthermore, to help ascertain what a reasonable consumer believes the term "steak" means, one should look to the definition and/or description from regulatory agencies, including the United States Department of Agriculture, for their guidance.

26. The "Angus" in the Dunkin' Donut product (Angus Steak and Egg Sandwich & Angus Steak and Egg Wrap) typically denotes that the "steak" is made from beef from Angus cattle.

**USDA Divides Raw Products (Animals or Birds) into Two (2) Categories: "Raw Product-Non-Intact" and "Raw Product-Intact"**

27. The United States Department of Agriculture Food Safety and Inspection Service (FSIS) has developed a hazard analysis and HACCP (hazard analysis and critical control points) Plan to "determine the food safety hazards reasonably likely to occur in the production process and to identify the preventive measures the establishments can apply to control those hazards" (9 CFR 417.2 (a)1).

28. There are nine (9) process categories identified in 9 CFR 417.2(b).

29. The categories divide Raw Products (animals or birds) into two categories: "Raw Product-Non-Intact" and "Raw Product-Intact."

30. As its name implies, the "Raw Product-Non Intact" category applies to "establishments that further process by using steps such as grinding, comminuting, injecting product with solutions, or mechanical tenderization by needling, cubing, pounding devices or other means of creating non-intact product."

31. On the other hand, the "Raw Product-Intact" category applies to products that have not "undergone any of the processes associated with the Raw Product -Non-Intact process category."

**USDA Process "Raw Product-Non-Intact" and "Raw Product-Intact" Categories as Applied to Beef**

32. In 1999, the FSIS published Federal Register document "Beef Products Contaminated with Escherichia coli O157:H7" (64 FR2803) which differentiates intact beef cuts from non-intact products.

33. In the document, the FSIS states: "Intact beef cuts of muscle include **steaks**, roasts, and other intact cuts (e.g. briskets, stew beef, and beef "cubes for stew," as well as thin-sliced strips of beef for stir-frying) in which the meat interior remains protected

from pathogens migrating below the exterior surface)" (2804).

34. On the other hand, "nonintact beef products include those beef products in which pathogens may be introduced below the surface by a comminution process such as chopping, grinding, flaking, or mincing (e.g., fresh veal sausage and **fabricated beef steak**)."

35. As in the FSIS bulletin, colloquially, absent any additional qualifier or modifier, "steak" refers to intact, rather than nonintact beef cuts.

**USDA Definition of the Non-Intact "Fabricated Steak"**

36. While the USDA does not define intact beef products in 9 CFR 319.15, it does define non-intact beef products, including "hamburger", "beef patties" and "fabricated steak."

37. "**Fabricated steak**," a nonintact beef product, is distinguished from "**steak**," an intact beef product, because it is comminuted (grounded), and formed.

38. By the USDA guidelines, the nonintact <u>fabricated</u> steak, is defined as "fresh and/or frozen meat, with or without added fat, of the species indicated on the label. Such products shall not contain more than 30 percent fat and shall not contain added water <u>or extenders</u>. Transglutaminase enzyme at levels of up to 65 ppm may be used as a binder. Beef cheek meat (trimmed beef cheeks) may be used in the preparation of fabricated beef steaks only in accordance with the conditions prescribed in paragraph (a) of this section" 9 CFR 319.15 (d).

39. In its definition, the United States Department of Agriculture states that similar products to fabricated steak are properly labeled with modifiers such as "chopped," "shaped," or "wafer sliced."

**Definition of Binders**

40. Binders are substances that may be added to food to thicken and improve texture.

41. Binders are separated into two (2) types: extenders and fillers.

42. Meat extenders are non-meat substances with substantial protein content, where fillers are high in carbohydrates.

43. Meat extenders and fillers are primarily used with the objective of making meat products lower-cost.

44. Extenders and fillers are distinguished from additives, which are used in small amounts.

45. On March 1, 1990, FSIS published the final rule, "Ingredients That May Be Designated as Natural Flavors, Natural Flavorings, Flavors, or Flavorings When Used in Meat or Poultry Products", which among others:

   a. Required more specific listing of certain ingredients. Substances such as dried beef stock, autolyzed yeast, and hydrolyzed proteins must be listed on the label by their common or usual names because their purpose is not just for flavor. They are flavor enhancers, emulsifiers, stabilizers, **and** binders.

**Dunkin' Donuts' Ingredient Statement**

46. In its own ingredient statement, Dunkin' Donuts lists its beef as "beef patty" and furthermore includes as part of its beef patty:

   a. Autolyzed yeast (defined by the FSIS 1990 bulletin as a binder);

   b. Hydrolyzed protein (defined by the FSIS 1990 bulletin as a binder): hydrolyzed soy protein and hydrolyzed corn protein;

   c. Milk (a binder high in animal protein sources);

d. Wheat gluten (a binder colloquially known as "wheat meat," used to cut down the cost of meat);

e. Triglyceride (fat);

f. Added water; and

g. Additional ingredients, including

    i. Glycerine (sweetener)

    ii. Flavoring: disodium guanylate, disodium inosinate, MSG;

    iii. Preservatives: BHA, TBHQ, citric acid and sodium tripolyphosphate.

47. The "beef patty" in the Dunkin' Donut product (Angus <u>Steak</u> and Egg Sandwich & Angus <u>Steak</u> and Egg Wrap) is thus neither intact beef, nor the nonintact fabricated steak.

48. In particular, the non-intact (grounded) "steak" in question contains both binders and added water and fat, and as such cannot be properly labeled as "fabricated steak" or even "hamburger."

**Dunkin' Donut's Deceptive Advertisement Campaign**

49. Despite this fact, Defendant and its retailers heavily market its Products as Angus Steak and Egg Sandwich <u>&</u> Angus Steak and Egg Wrap, and offers its Product at a premium as a superior product to its Classic sandwiches and wraps.

50. A reasonable customer understands Defendant's "Steak" claims to mean that the Products feature Angus "steak", and not burgers or patties.

51. The marketing of the Products as "Steak" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "Steak" claims are material to consumers.

52. Dunkin' Donuts stands to profit from its deceptive advertising campaign.

53. Upon information and belief, Baskins-Robbins Franchising LLC, a wholly owned Delaware Liability Company; and Dunkin' Donuts Franchising LLC, a wholly owned Delaware Liability Company receives between 10-12% of the gross sales from its franchisees as its franchising fee.

54. Upon information and belief, 4.5-5% of the gross sales is designated as its "advertising fee rate," which includes both online and store-based advertisement.

55. Upon information and belief, Dunkin' Donuts designates suppliers with whom franchisees must obtain their supplies to fill their "frozen storage facility."

56. Upon information and belief, Dunkin' Donuts franchisees are required to sell required products, and only approved products, sourced from approved suppliers by Dunkin' Donuts.

57. Upon information and belief, Dunkin' Donuts consultants would regularly check if Dunkin' Donuts store are in compliance with its standards, including its purchase of materials.

58. Dunkin' Donuts thus stood to profit by increasing sales of its Product with the deceptive advertisement, as it directly benefitted from the increase in its franchisee's gross sales.

59. This is made clear in Defendant's marketing campaigns, including its TV commercials: "Fellow-Steak-Lover Handshake," "Angus Steak & Egg Sandwich" and "Angus Steak Big N' Toasted".

60. In the commercials, Defendant intentionally misrepresents the nature of its Product as Angus Steak and Egg Sandwich <u>&</u> Angus Steak and Egg Wrap.

61. In the commercial, "Fellow-Steak-Lover Handshake[1]," for instance, a woman in
orange cardigan and white dress holds an Angus Steak and Egg Sandwich in her left
hand and says: "It's back" to another woman, dressed in grey-and-black striped
cardigan, yellow blouse, and jeans and seated on a bench with the man.

62. The woman in stripes answers: "Right?" and proceeds in fast procession of hand
claps, hand slaps, fist pumps, and a handshake.

63. After the woman left, the man on the bench asks the woman in stripes: "Do you
know her?"

64. To this, woman responds: "Fellow **Steak** Lover."



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg TV Commercial, 'Fellow
Steak-Lover Handshake'", referenced above, in Footnote 1).

65. The man nods, as he says: "It's that good," referring to the sandwich he holds on his
left hand.

---

[1] "Dunkin' Donuts Angus Steak & Egg TV Commercial, 'Fellow Steak-Lover Handshake'". Online video
clip. *iSpot.tv*. Accessed Web. <https://www.ispot.tv/ad/7IKO/dunkin-donuts-angus-steak-and-egg-fellow-
steak-lover-handshake>. 25 June 2017.



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg TV Commercial, 'Fellow Steak-Lover Handshake'", referenced above, in Footnote 1).

66. The scene then cuts away from the couple on the bench to a close up of the bottom sandwich roll with egg.

67. As the narrator speaks: "It's a big day for **Steak** fans, Duncan's Angus **Steak** and Eggs breakfast sandwich is back!" a fork places the "steak" onto the egg.



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg TV Commercial, 'Fellow Steak-Lover Handshake'", referenced above, in Footnote 1).

68. "Now with a peppered fried egg," on top of the egg, before the scene cuts to cuts to a close up of the finished sandwich.

69. An orange subtitle "ANGUS **STEAK** & EGG" then "flips down", while the narrator continues "Grab one today and celebrate the **Steak**! America runs on Dunkin'."



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg TV Commercial, 'Fellow Steak-Lover Handshake'", referenced above, in Footnote 1).

70. The scene then cuts from the American runs on donut back to the sandwich, this time with the subtitle "**STEAK** IS BACK", while the narrator continues: "**Steak** is back, hurry up and Angus' **Steak** and Egg breakfast sandwich today."



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg TV Commercial, 'Fellow Steak-Lover Handshake'", referenced above, in Footnote 1).

71. The commercial "Angus Steak & Egg Sandwich" advertisement features what is essentially a "Steak and Egg" chant by its actors and actresses.

72. In the commercial, "Angus Steak & Egg Sandwich[2]," a man in suit runs down the steps and declares: "I've got the job."

---

[2] "Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot". Online video clip. *iSpot.tv*. Accessed Web. < https://www.ispot.tv/ad/7stB/dunkin-donuts-angus-steak-and-egg-sandwich>.  25 June 2017.



(Screenshot of the video ˝Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced below, in Footnote 2).

73. To which, another man seated (presumably waiting for him), holds out both hands,

both holding Dunkin' Donut's steak and egg sandwich, responds: "**Steak** and Eggs."

74. All three persons (including a seated woman who stands up) says: "**Steak** and

Eggs!"

75. The scene then cuts to an automobile maintenance center, with the mechanic dressed

in navy blue nodding, saying "**Steak** and eggs".

76. The mechanic in baby blue to his left toasts, holding out with his left hand: "**Steak**

and Eggs", before the mechanic in navy blue bumps him in camaraderie.



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced above, in Footnote 2).

77. The scene then cuts to in front of a home, where a man dressed in brown vest and

plaid gray and white shirt and jeans and holds a Dunkin' Steak and Egg sandwich in

his left hand reaches into a Dunkin' Donut bag.

78. He holds to a man dressed in a navy sweatshirt the Dunkin' Steak and Egg sandwich, and declares: "**Steak** and Eggs".



(Screenshot of the video Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced above, in Footnote 2).

79. The scene then cuts back to the two mechanics, who stare at each other intently, as the mechanic in baby blue affirms: "**Steak** and Eggs" while bumping him.

80. The mechanic in navy blue laughs: "Uh-huh."



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced above, in Footnote 2).

81. The scene then cuts back to the man who got his job and his two friends, as the man holds his Steak and Egg bagel up with his left hand and yells: "**Steak** and Eggs!" and his friends follows with another "**Steak** and Eggs!"



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced above, in Footnote 2).

82. The scene then cuts back to the front of the home, as the man in navy suit golfs

down his sandwich and pats his friend in appreciation.

83. To this, the friend smugly says, "**Steak** and Eggs."



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced above, in Footnote 2).

84. The scene then cuts to a Steak and Egg bagel while the voiceover begins: "When a

date deserves **Steak** and Eggs, give it **Steak** and Eggs."



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced above, in Footnote 2).

85. The scene then switches, and a peppered over-easy egg is placed on top of the

bottom of a roll.

86. Then, a fork (as in the "Fellow Steak Lover" ad) places the "steak" on top of the egg,

while the narrator continues: "Dunkin's Angus **Steak** and Egg sandwich…"



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced above, in Footnote 2).

87. The scene proceeds to a close up of the "Angus Steak and Egg" wrap, while the

narrator continues: "… is over toasted and made with Angus beef!"



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced above, in Footnote 2).

88. The scene then switches again to a closeup of the Angus Steak and Egg bagel, with

the orange subtitle "ANGUS **STEAK** & EGG SANDWICH" while the narrator

says: "Hurry in today. America runs on Dunkin'."



(Screenshot of the video "Dunkin' Donuts Angus Steak & Egg Sandwich TV Spot",
referenced above, in Footnote 2).

89. In the commercial, "Dunkin' Donuts Angus Steak Big and Toasted[3]", a construction

worker in an orange construction hat holds a Big N' Toasted Angus Steak Texas

sandwich and says to his coworker-friends: "This Big N' Toasted is better than

Nothing."



(Screenshot of the video Dunkin' Donuts Angus Steak Big N' Toasted TV Commercial,
'Ambience', referenced above, in Footnote 3).

90. To this, the worker in white hat says: "Got to be **Steak**."

91. The worker in silver hat (unseen) says: "Aww… This is **Steak**."

92. The worker in yellow hat is not sure, and says: "Maybe it's the Ambiance or the

Willy Banto."

---

[3] "Dunkin' Donuts Angus Steak Big N' Toasted TV Commercial, 'Ambience'". Online video clip. *iSpot.tv*.
Accessed Web. <https://www.ispot.tv/ad/7bSP/dunkin-donuts-angus-steak-big-n-toasted-ambiance>. 25
June 2017.

93. The worker in silver hat replies: "No! this is **Steak**!"

94. The worker in orange hat says: "It's their mistake," to which the worker in silver hat adds, sarcastically, "Ambiance."

95. The worker in white hat asks: "Ambiance means Cheese, right"?

96. The scene then cuts to a close up of the Angus Steak and Cheese Texas toast sandwich as the narrator says: "The new Angus Big N' Toasted is even better!"



(Screenshot of the video Dunkin' Donuts Angus Steak Big N' Toasted TV Commercial, 'Ambience', referenced above, in Footnote 3).

97. The scene then cuts again to a close up of the bottom of the Texas toast with egg, as a fork places the "steak" on top of the Texan toast, while the narrator continues: "Now with Angus **Steak** and cheese on thick Texas toast!"



(Screenshot of the video Dunkin' Donuts Angus Steak Big N' Toasted TV Commercial, 'Ambience', referenced above, in Footnote 3).

98. The scene then cuts back to a closeup of the Angus Steak and Cheese Texas Toast as the narrator says: "It's big on **Steak**, huge on delicious." The pink and orange subtitle is "NEW/ ANGUS STEAK/ BIG N' TOASTED".



(Screenshot of the video Dunkin' Donuts Angus Steak Big N' Toasted TV Commercial, 'Ambience', referenced above, in Footnote 3).

99. The narrator then finishes: "Grab one today, America runs on Dunkin."

100.  "Hurry in today for Dunkin's new Angus Steak Big N' Toasted Breakfast sandwich."

**Plaintiff CHUFEN CHEN**

101.  Plaintiff CHUFEN CHEN was repeatedly exposed to and saw Defendant's advertisements and representations regarding Defendant's Product.

102.  On or about June 21, 2017, Plaintiff CHUFEN CHEN purchased an "Angus Steak and Egg Bagel" at Dunkin' Donuts #347899 at 4159 Kissena Blvd, Flushing, NY 11355 for three dollars and ninety nine cents ($3.99) plus tax upon the representation that what she purchased was an actual angus steak and egg on a bagel.

103.  Plaintiff CHUFEN CHEN paid a fifty cents ($.50) premium for her "Angus Steak and Egg Bagel" over the Classic Egg and Cheese Bagel (with Ham, Bacon or Sausage).

104.  On or about June 24, 2017, Plaintiff CHUFEN CHEN purchased an "Angus Steak

and Egg Snack N' Go Wrap" at Dunkin' Donuts #347899 for one dollars and ninety

nine cents ($1.99) plus tax at 4159 Kissena Blvd, Flushing, NY 11355 upon the

representation that what she purchased was an actual angus steak and egg wrap.

105.   Plaintiff CHUFEN CHEN paid a sixty cents ($.60) premium for her "Angus Steak

and Egg wrap" over the Classic Egg and Cheese wrap (with Ham, Bacon or

Sausage).

**Plaintiff ELIE EVANSON**

106.   From 2010 to 2017, Plaintiff ELIE EVANSON was repeatedly exposed to and

saw Defendant's advertisements and representations regarding Defendant's Product.

107.   From 2010 to 2017, Plaintiff ELIE EVANSON would purchase 2 or 3 "Angus

Steak and Egg Bagels" each week they were sold.

108.   On or about July 11, 2013, Plaintiff ELIE EVANSON purchased a coffee and an

"Angus Steak and Egg Bagel" at Dunkin' Donuts #300212 at 76 Middlesex Avenue,

Somerville, MA 02145 for a total of six dollars and nine cents ($6.09) including tax

upon the representation that what he purchased was actual angus steak and egg on a

bagel.

109.   On or about July 18, 2013, Plaintiff ELIE EVANSON purchased a coffee and an

"Angus Steak and Egg Bagel" at Dunkin' Donuts #300212 at 76 Middlesex Avenue,

Somerville, MA 02145 for a total of six dollars and nine cents ($6.09) including tax

upon the representation that what he purchased was actual angus steak and egg on a

bagel.

110.   On or about June 13, 2017, Plaintiff ELIE EVANSON purchased a coffee at

Dunkin' Donuts #300212 at 76 Middlesex Avenue, Somerville, MA 02145 for a

total of two dollars and fifty-six cents ($2.56) including tax.

111.   Plaintiff ELIE EVANSON paid three dollars and thirty-two cents ($3.32) for the Angus Steak and Egg Bagel before tax.

112.   Plaintiff ELIE EVANSON paid a fifty-cent ($0.50) premium for his Angus Steak and Egg Bagel over the Classic Egg and Cheese Bagel (with Ham, Bacon or Sausage).

113.   Plaintiff ELIE EVANSON also frequently purchased Angus Steak and Egg Bagels from the following Dunkin Donuts locations: at 230 Congress Street, Boston, MA 02110; 3 Post Office Square, Boston, MA 02109; 321 Ferry Street, Everett, MA 02149; and 524 Broadway, Everett, MA 02149.

**Plaintiff SHERRY L JOHNSON**

114.   Plaintiff SHERRY L JOHNSON was repeatedly exposed to and saw Defendant's advertisements and representations regarding Defendant's Product.

115.   Beginning in November 2012, Plaintiff SHERRY L JOHNSON purchased two (2) "Angus Steak and Egg" sandwiches per day, on a variety of bagels, croissants, and bread, at least two (2) days out of every week.

116.   From on or about November 28, 2016 to December 18, 2016, Plaintiff SHERRY L JOHNSON purchased two (2) "Angus Steak and Egg Bagels" every day in addition to other items (other sandwiches, donuts, coffee, and bottled drinks).

117.   From on or about December 18, 2017 to July 1, 2017, with the exceptions of December 26, 2016 and January 1, 2017, Plaintiff SHERRY L JOHNSON purchased at least two (2) "Angus Steak and Egg" items every day, and sometimes three (3).

118.   Between December 18, 2016 and July 1, 2017, Plaintiff SHERRY L JOHNSON purchased one (1) "Angus Steak and Egg Wrap."

119.   On July 1, 2017, Plaintiff SHERRY L JOHNSON purchased three (3) "Angus

Steak and Egg Bagels." This was Plaintiff SHERRY L JOHNSON's final purchase of any "Angus Steak and Egg" item from Dunkin' Donuts.

120.   Plaintiff SHERRY L JOHNSON typically purchased "Angus Steak and Egg" items from the Dunkin' Donuts located at 3768 S Orlando Drive, Sanford, FL, 32773.

121.   Plaintiff SHERRY L JOHNSON occasionally purchased "Angus Steak and Egg" items from the Dunkin' Donuts located at 4510 W State Road 46, Sanford, FL, 32771, at 4610 W Lake Mary Boulevard, Lake Mary, FL, 32746, and at 300 S US Highway 17/92, Longwood, FL 32750.

122.   Plaintiff SHERRY L JOHNSON very infrequently purchased "Angus Steak and Egg" items from the Dunkin' Donuts located at 946 W State Road 436, Altamonte Springs, FL 32714, and at 801 W State Road 434, Longwood, FL 32750.

123.   Plaintiff SHERRY L JOHNSON paid four dollars and fifty cents ($4.50) for an "Angus Steak and Egg" sandwich, and six dollars and ninety-five cents ($6.95) for an "Angus Steak and Egg" combo with sandwich, small hash browns, and medium coffee.

124.   At the same time, "Classic Egg and Cheese" sandwiches cost two dollars and eighty-nine cents ($2.89). "Classic Egg and Cheese" sandwiches with bacon, sausage, or ham cost four dollars and five cents ($4.05).

125.   Plaintiff SHERRY L JOHNSON paid a forty-five cent ($0.45) premium for the "Angus Steak and Egg" sandwich over the "Classic Egg and Cheese" sandwich with bacon, sausage or ham, acting upon the representation that the meat on her sandwich was actual Angus steak.

**Plaintiff DAVID A BUCHOLTZ**

126.   Plaintiff DAVID A BUCHOLTZ was repeatedly exposed to and saw Defendant's

advertisements and representations regarding Defendant's Product.

127.   On or about June 20, 2017, June 21, 2017, and June 22, 2017, Plaintiff DAVID A

BUCHOLTZ purchased an "Angus Steak and Egg" sandwich at Dunkin' Donuts at 4

S Groesbeck Highway, Charter Township of Clinton, MI 48036 for three dollars and

ninety-nine cents ($3.99) plus tax upon the representation that what he purchased

was an actual angus steak and egg on a bagel.

128.   Plaintiff DAVID A BUCHOLTZ paid a fifty cent ($.50) premium for his "Angus

Steak and Egg" sandwich over the Classic Egg and Cheese Bagel (with Ham, Bacon

or Sausage).

**Plaintiff MICHELLE BEATTIE**

129.   Plaintiff MICHELLE BEATTIE was repeatedly exposed to and saw Defendant's

advertisements and representations regarding Defendant's Product.

130.   Plaintiff MICHELLE BEATTIE preferred to order the Angus Steak and Egg

Sandwich because she was a consumer who prized quality meat.

131.   Plaintiff MICHELLE BEATTIE preferred to pay a premium to purchase the

Angus Steak and Egg Sandwich to celebrate the upcoming weekend each week.

132.   On April 28, 2017, Plaintiff MICHELLE BEATTIE purchased two (2) Angus

Steak and Egg Sandwich for herself and her husband when they sat down for lunch.

133.   On the Fridays thereafter, on May 12, 2017; May 19, 2017; June 2, 2017; June 16,

2017; June 23, 2017, Plaintiff MICHELLE BEATTIE purchased a couple of Angus

Steak and Egg Sandwiches for lunch.

134.   On July 7, 2017, Plaintiff MICHELLE BEATTIE purchased two (2) Angus Steak

and Egg Sandwiches for lunch.

135.  On July 29 2017, Plaintiff MICHELLE BEATTIE purchased an Angus Steak and

Egg English Muffin with cheddar for around five dollars and fifty cents ($5.50) at

the Dunkin' Donuts at 601 Pacific Highway, San Diego, CA 92101 upon the

representation that what she purchased was an actual angus steak and egg sandwich.

136.  Plaintiff MICHELLE BEATTIE paid a premium of around one dollar and fifty

cents ($1.50) for her "Angus Steak and Egg" sandwich over the Classic Egg and

Cheese Bagel (with Ham, Bacon or Sausage).

## CLASS ACTION ALLEGATIONS

137.  Plaintiffs bring this lawsuit, both individually and as a class action on behalf of

similarly situated purchasers of the Dunkin' Donuts "Angus Steak and Egg Sandwich",

including on Plain Bagel, Croissant, English Muffin, Multigrain Flatbread, and Texas

Toast and "Angus Steak and Egg Snack N' Go Wrap", also known as the "Angus

Steak and Egg Wrap", and formerly known as the "Angus Steak and Egg Wake-Up

Wrap", pursuant Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

The proposed Class is defined as:

> All persons in the United States who purchased Angus Steak and Egg
> Sandwich", including on Plain Bagel, Croissant, English Muffin,
> Multigrain Flatbread, and Texas Toast and "Angus Steak and Egg Snack
> N' Go Wrap", formerly known as the "Angus Steak and Egg Wake-Up
> Wrap" and were charged a premium for their purchase of "steak"
> sandwiches and wraps.

Excluded from the proposed Class are Defendant, its respective officers, directors

and employees, any entity that has a controlling interest in Defendant, and all of its

respective employees, affiliates, legal representatives, heirs, successors, or assignees.

Also excluded from membership in the Class is any Judge or Magistrate presiding over this action and members of their family. Any claims for personal injury or consequential damages, not otherwise permitted under the facts pled herein, are excluded.

138.   Plaintiffs also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York, Massachusetts, Florida, Michigan, and California at any time during the Class Period (respectively, the "New York Subclass", the "Massachusetts Subclass," the "Florida Subclass," the "Michigan Subclass" and the "California Subclass").

139.   The Class and New York, Massachusetts, Florida, Michigan and California Subclasses shall be referred to collectively throughout the Complaint as the Class.

140.    Plaintiffs reserve the right to amend the Class definition as necessary.

141.   The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

***Numerosity***

142.   Upon information and belief, the Class comprises millions of consumers throughout the nation, and is so numerous that joinder of all members of the Class is impracticable. While the exact number of Class members is presently unknown and can only be ascertained through discovery, Plaintiffs believe that there are millions of Class members based upon the fact that Dunkin' Donuts is one of the largest, if not the largest, retailers in the world, with over 19,000 retail stores, and its Steak and Egg sandwiches and wrap is a popular item offered for sale by Defendants.

*Commonality*

143.   There are questions of law and fact common to the Class, which predominate over

any individual issues, including:

a.   Whether Defendant is responsible for the conduct alleged herein which was
uniformly directed at all consumers who purchased the Products;

b.   Whether Defendant's "steak" is non-intact (grounded), and if so, whether
Defendant's steak includes "binders" and added water and fat (triglyceride);

c.   Whether Defendant represented that its Product is "steak" as opposed to
labelling as "fabricated steak" or "hamburger" or "patty";

d.   Whether Defendants labeled its "Steak" as "beef patty" in its ingredients
label;

e.   Whether Defendants charged a premium for its Product;

f.   Whether Defendant failed to disclose that its Product is in fact "patty"
sandwiches and wraps instead of "steak" sandwiches and wraps;

g.   Whether Defendant's claims regarding its Product are deceptive or
misleading;

h.   Whether Defendant engaged in false, deceptive and/or misleading advertising;

i.   Whether Defendant's conduct as alleged herein violates the consumer fraud
statutes of the various States and the District of Columbia;

j.   Whether Plaintiffs and Class members have sustained monetary loss and the
proper measure of that loss;

k.   Whether Plaintiffs and Class members are entitled to declaratory and
injunctive relief; and

l.   Whether Defendant was unjustly enriched.

*Typicality*

144.   Plaintiffs' claims are typical of those claims which could be alleged by any

member of the Class, and the relief sought is typical of the relief that would be

sought by each member of the Class in separate actions. All the Class members were

subject to the same corporate practices of Defendants, as alleged herein, Defendants'
corporate wide policies and practices affected all Class members similarly, and
Defendants benefited from the same type of unfair and/ or wrongful acts as to each
Class member. Plaintiffs and other Class members sustained similar losses, injuries
and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

145.   Plaintiffs are able to fairly and adequately protect the interests of the Class and
have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys
who are experienced and competent representing Plaintiffs in both class action and
consumer fraud cases.

*Superiority*

146.   A class action is superior to other available methods for the fair and efficient
adjudication of the controversy, particularly in the context of consumer fraud
litigation where individual Class members lack the financial resources to vigorously
prosecute a lawsuit against corporate defendants. Class action treatment will permit a
large number of similarly situated persons to prosecute their common claims in a
single forum simultaneously, efficiently, and without the unnecessary duplication of
efforts and expenses that numerous individual actions engender.  Because the losses,
injuries, and damages suffered by each of the individual Class members are small in
the sense pertinent to a class action analysis, the expenses and burden of individual
litigation would make it extremely difficult or impossible for the individual Class
members to redress the wrongs done to them.  Further, important public interests

will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

147.   Unless a class is certified, Defendant will retain monies received as a result of its conduct that was wrongfully taken from Plaintiffs and proposed Class members. Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the proposed Class and the general public will continue to be misled.

148.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## STATEMENT OF CLAIMS

## COUNT I.
### [Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the New York GBL §349 brought on behalf of Plaintiffs and proposed New York subclass]

149.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

150.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

151.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

152.    There is no adequate remedy at law.

153.    Defendant misleadingly, inaccurately, and deceptively presents its Product to consumers, including Plaintiff CHUFEN CHEN.

154.    Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as including Angus "steak"—is misleading in a material way in that it, inter alia, induced Plaintiff CHUFEN CHEN and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

155.    Plaintiff CHUFEN CHEN and the New York Subclass Members have been injured

inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not Angus "steak". Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

156.   Defendant's advertising and Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

157.   Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff CHUFEN CHEN and the New York Subclass Members have been damaged thereby.

158.   As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**COUNT II.**
**[False Advertising, Pursuant to the New York GBL §350**
**brought on behalf of Plaintiffs and proposed New York subclass]**

159.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

160.   N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

161.   N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

162.   Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are Angus Steak and Egg Sandwich <u>&</u> Angus Steak and Egg Wrap when in fact they are Angus Patty and Egg Sandwich <u>&</u> Angus Patty and Egg Wrap, an inferior product.

163.   Plaintiff CHUFEN CHEN and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were—contrary to Defendant's representations—do not include Angus "Steak". Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

164.   Defendant's advertising, packaging and products' labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products.

165.   Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

166.   Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

167.   Defendant made the material misrepresentations described in this Complaint in

Defendant's advertising, and on the Products' labeling.

168.   Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

169.   As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.


## COUNT III.
### [Violations of Florida Deceptive and Unfair Trade Practices Act
### Pursuant to the Florida Statutes §501.201
### brought on behalf of Plaintiffs and proposed Florida subclass]

170.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

171.   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.* proposes to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

172.   Plaintiff SHERRY JOHNSON is a consumer as defined by Fla. Stat. §501.203.

173.   Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."

174.  Defendants have violated the Act by engaging in the unfair and deceptive

practices as described herein which offend public policies and are immoral,

unethical, unscrupulous and substantially injurious to consumers.

175.  Plaintiff SHERRY L JOHNSON and the Florida Subclass have been aggrieved by

Defendants' unfair and deceptive practices.

176.  The damages suffered by Plaintiff and the Florida Subclass were directly and

proximately caused by the unfair and deceptive practices of Defendants, as more

fully described herein.

177.  Pursuant to Fla. Stat. §501.211(1), Plaintiff SHERRY L JOHNSON and the

Florida Subclass seek a declaratory judgment and court order enjoining the above-

described wrongful acts and practices of Defendants and for restitution and

disgorgement.

178.  Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff and the

Class make claims for damages, attorneys' fees and costs.


### COUNT IV.
**[Violations of Massachusetts Regulation of Business Practice and Consumer
Protection Act
Pursuant to the Massachusetts General Laws 93A§1-11
brought on behalf of Plaintiffs and proposed Massachusetts subclass]**

179.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

180.  Defendants' labeling, marketing, advertising, and promotion of its Product are

untrue, deceptive, and/or misleading, in violation of Mass. Gen. Laws ch. 266 § 91.

181.  As a purchaser of Product who was damaged by Defendants' untrue, deceptive

and/or misleading advertising (in that Plaintiff ELIE EVANSON and the other Class members purchased a product that did not conform to the representations made about the product by Defendants), Plaintiff ELIE EVANSON is entitled to and does bring this class action to seek all available remedies under Mass. Gen. Laws ch. 266 § 91, including injunctive relief.

182.   The injunctive relief would include an order directing Defendants to cease their false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

**COUNT V.**
**[Violations of Michigan Regulation of Business Practice and Consumer Protection Act**
**Pursuant to the Michigan Consumer Protection Act, M.C.L. § 445.901 et seq.**
**brought on behalf of Plaintiffs and proposed Michigan subclass]**

183.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

184.   Plaintiff DAVID A BUCHOLTZ and each of the members of the Michigan Subclass acted as consumers, purchasing the Product for personal, family or household purposes.

185.   The Product qualifies as a "good" under Michigan's Consumer Protection Act.

186.   Further, Plaintiff and the members of the Michigan Subclass' purchases of the Product constitutes a "trade and commerce" under the Act.

187.   Defendants' labeling, marketing, advertising, and promotion of its Product are untrue, deceptive, and/or misleading, in violation of Michigan Consumer Protection Act, M.C.L. § 445.901 *et seq*.

188.   Defendant concealed, suppressed, or omitted material facts with the intent that

Plaintiff DAVID A BUCHOLTZ and Class members rely upon such concealment, suppression or omissions.

189.  Defendant's objectively deceptive conduct had the capacity to deceive reasonable consumers under the circumstances.

190.  As a purchaser of Product who was damaged by Defendants' untrue, deceptive and/or misleading advertising, Plaintiff DAVID A BUCHOLTZ is entitled to and does bring this class action to seek all available remedies under Mass. Gen. Laws ch. 266 § 91, including injunctive relief.

191.  Defendant's conduct, which included deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts, caused the resulted injury in fact and an ascertainable loss of money or property to Plaintiff DAVID A BUCHOLTZ and Class members. The resulting injury to Plaintiff DAVID A BUCHOLTZ and the members of the Michigan Subclass was reasonably foreseeable by Defendant.

192.  Plaintiff DAVID A BUCHOLTZ, on behalf of herself and other members of the Michigan Subclass, seek to recover the damages suffered, including actual and punitive damages, restitution of all monies wrongfully acquired by Defendant as a result of this misconduct, injunctive and declaratory relief, attorney fees, costs of suit, and other non-monetary relief as appropriate.


**COUNT VI.**
**[Violations of California False Advertising Law,**
**Pursuant to C.A. Civil Code §17200, *et seq*.**
**brought on behalf of Plaintiffs and proposed California subclass]**

193.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

194.   Defendant publicly disseminated untrue or misleading advertising or intended not to sell its Products as advertised in violation of California Business & Professional Code § 17500, et seq., by, representing that Its Product has "steak" when it does not.

195.   Defendant committed such violations of the False Advertising Law with actual knowledge or in the exercise of reasonable care should have known was untrue or misleading.

196.   Plaintiff MICHELLE BEATTIE and members of the California Subclass reasonably relied on Defendant's representations and/or omissions made in violation of California Business & Professional Code § 17500, et seq.

197.   As a direct and proximate result of Defendant's violations, Plaintiff BEATTIE and members of the California Subclass suffered injury in fact and lost money.

198.   Plaintiff MICHELLE BEATTIE, on behalf of herself and on behalf of members of the California Subclass, seek equitable relief in the form of an order requiring Defendant to refund them for the premium paid, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein and performing a corrective advertising campaign.

### COUNT VII.
### [Violations of California Unfair Competition Law,
### Pursuant to C.A. Civil Code §17200, *et seq*.
### brought on behalf of Plaintiffs and proposed California subclass]

199.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

200.   Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*, the False Advertising Law, California

Business & Professions Code § 17500, *et seq.*

201.    Defendant's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and Class members. The harm to Plaintiff BEATTIE and members of the California Subclass arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct. Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act, False Advertising Law, Sherman Food, Drug & Cosmetic Law, and FDA regulations as alleged herein.

202.    Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers. Plaintiff MICHELLE BEATTIE and members of the California Subclass relied on Defendant's representations and omissions.

203.    As a direct and proximate result of Defendant's violations, Plaintiff BEATTIE and members of the California Subclass suffered injury in fact and lost money.

204.    Plaintiff MICHELLE BEATTIE, on behalf of herself and on behalf of members of the California Subclass, seek equitable relief in the form of an order requiring Defendant to refund them for the premium paid, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein and performing a corrective advertising campaign.

## COUNT VIII.
**[Violation of the Consumer Fraud and Deceptive Trade Practices Acts of the Various States and District of Columbia brought on behalf of Plaintiffs and proposed class]**

205. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

206. Plaintiff brings Count I individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

    a. the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*;

    b. the Alaska Unfair Trade Practices and Consumer Protection Act, AS §45.50.471, *et seq.*;

    c. the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

    d. the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

    e. the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*; and the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

    f. the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

    g. the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

    h. the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

    i. the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

    j. the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

    k. the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

    l. the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

    m. the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

n. the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

o. the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;

p. the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

q. the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

r. the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

s. the Louisiana Unfair Trade Practices and Consumer Protection Law, LSAR.51:1401, *et seq.*;

t. the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

u. the Maryland Consumer Protection Act, MD Code, Commercial Law, §13-301, *et seq.*;

v. the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

w. the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

x. the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

y. the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*

z. the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

aa. the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

bb. the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq.*;

cc. the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

dd. the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

ee. the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

ff. the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

gg. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

hh. the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

ii. the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq.*;

jj. the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

kk. the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

ll. the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

mm. the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

nn. the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

oo. the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

pp. the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

qq. the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;
rr. the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

ss. the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

tt. the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

uu. the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

vv. the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

ww. the West Virginia Consumer Credit and Protection Act, W.Va.Code §46A-1-101, *et seq.*;

xx. the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

yy. the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

207.   Defendant's foregoing misrepresentations and omissions regarding the nature of its Product, are deceptive and/or unfair acts or practices prohibited by the consumer fraud statutes set forth above.

208.   Defendant intended to be deceptive and/or unfair to Plaintiff and the proposed Class by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above, because had Defendant provided accurate information, Plaintiff and the proposed Class members would not have purchased the Product and paid a premium price to Dunkin' Donut's classic sandwiches.

209.   Defendant's practice of creating, approving and distributing advertising for Dunkin' Donut Product that contained false and misleading representations regarding the nature of its Product for the purpose of selling them to Plaintiff and the proposed Class, as alleged in detail *supra*, is both an unfair act and deceptive practice prohibited by the foregoing statutes.

210.   Defendant intended to be deceptive and unfair to Plaintiff and the proposed Class by unlawfully representing that each of Dunkin' Donut's Product in fact includes Angus **Steak**. Defendant's intent is evidenced by, *inter alia*, its heavy reliance on the term "Steak" (as opposed to "Patty") in its retail, online, and commercial advertisement of its Product.

211.   Defendant intended that Plaintiff and the proposed Class members rely on Defendant's misrepresentations as to the nature of its Product (as "Steak"), and Defendant omitted to disclose to or notify Plaintiff and the proposed Class that the in fact its product features "Patty" and not "Steak".

212. Plaintiff and the proposed Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the Dunkin' Donut Product after seeing Defendant's advertising. Indeed, Defendant made no attempt to inform consumers that Dunkin' Donut Product do not include "Steak".

213. Had Plaintiff and the proposed Class members known the truth, they would not have purchased the Dunkin' Donut "Angus Steak" sandwich or wrap at a premium.

214. The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the sale of the Product to Plaintiff and the proposed Class members.

215. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.


### COUNT IX.
### [Unjust Enrichment
### brought on behalf of Plaintiffs and proposed Class]

216. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

217. Plaintiffs bring this claim individually, and on behalf of all similarly situated residents in and under the unjust enrichment laws of each of the 50 states and the District of Columbia.

218. As a direct and proximate result of Defendant's misconduct as set forth above,

Defendant has been unjustly enriched.

219.   Specifically, by its misconduct described herein, Defendant has accepted a benefit (i.e., monies paid by Plaintiffs and the proposed Class members for the purchase of the Product, at a premium of its Classic line of sandwiches) to the detriment of Plaintiff and the proposed Class.

220.   Defendant's retention of the full amount of monies paid for its Products violates the fundamental principles of justice, equity, and good conscience.

221.   Defendant accepted the benefit based on its misrepresentations and omissions regarding the its Product to the Plaintiffs and the proposed Class members, and it would be inequitable for the Defendant to retain the benefit of those monies, as it was paid the money under false pretenses.

222.   Defendant has obtained money to which it is not entitled, and interest on that money, and under these circumstances equity and good conscience require that the Defendant return the money with interest to the Plaintiffs and the proposed Class.

223.   As a direct and proximate result of the foregoing, Plaintiffs and the proposed Class have been damaged in an amount to be determined at trial.


## COUNT X.
### [Breach of Express Warranty
### brought on behalf of Plaintiffs and proposed Class]

224.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

225.   Defendants provided Plaintiffs and other members of the Class with written express warranties including, but not limited to, warranties that Dunkin' Donuts Products were

"Angus Steak"

226.   These affirmations of fact or promises by Defendants relate to the goods and became part of the basis of the bargain.

227.   Plaintiffs and members of the Class purchased Products believing them to conform to the express warranties.

228.   Defendants breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class, who bought Defendant's Product but did not receive the goods as warranted.

229.   Defendants breached the following state warranty laws:

a. Alabama. Code § 7-2-313;

b. Alaska Stat. Ann. § 45.02.313;

c. Arizona Rev. Stat. Ann. § 47-2313;

d. Arkansas Code Ann. § 4-2-313;

e. California Com. Code § 2313;

f. Colorado Rev. Stat. Ann. § 4-2-313;

g. Connecticut Gen. Stat. Ann. § 42a-2-313;

h. Delaware Code Ann. Tit. 6, § 2-313;

i. District of Columbia Code Ann. § 28:2-313;

j. Florida Stat. Ann. § 672.313;

k. Georgia Code Ann. § 11-2-313;

l. Hawaii Rev. Stat. Ann. § 490:2-313;

m. Idaho Code Ann. § 28-2-313;

n. 810 Illinois Comp. Stat. Ann. 5/2-313;

o. Indiana Code Ann. § 26-1-2-313;

p. Iowa Code Ann. § 554.2313;

q. Kansas Stat. Ann. § 84-2-313;

r. Kentucky Rev. Stat. Ann. § 355.2-313;

s. Louisiana Civ. Code Ann. Art. 2520;

t. Maine Rev. Stat. Ann. Tit. 11, § 2-313;

u. Maryland Code Ann., Com. Law § 2-313;

v. Massachusetts Gen. Laws Ann. Ch. 106, § 2-313;

w. Michigan Comp. Laws Ann. § 440.2313;

x. Minnesota Stat. Ann. § 336.2-313;

y. Mississippi Code. Ann. § 75-2-313;

z. Missouri Ann. Stat. § 400.2-313;

aa. Montana Code Ann. § 30-2-313;

bb. Nebraska Rev. Stat. Ann. § UCC § 2-313;

cc. Nebraska Rev. Stat. Ann. § 104.2313;

dd. New Hampshire Rev. Stat. Ann. § 382-A:2-313;

ee. New Jersey Stat. Ann. § 12a:2-313;

ff. New Mexico Stat. Ann. § 55-2-313;

gg. New York U.C.C. Law § 2-313;

hh. North Carolina Gen. Stat. Ann. § 25-2-313;

ii. North Dakota Cent. Code Ann. § 41-02-30;

jj. Ohio Rev. Code Ann. § 1302.26;

kk. Oklahoma Stat. Ann. Tit. 12a, § 2-313;

ll. Oregon Rev. Stat. Ann. § 72.3130;

mm. 13 Pennsylvania Stat. And Cons. Stat. Ann. § 2313;

nn. Rhode Island Gen. Laws Ann. § 6a-2-313;

oo. South Carolina Code Ann. § 36-2-313;

pp. South Dakota Codified Laws § 57a-2-313;

qq. Tennessee Code Ann. § 47-2-313;

rr. Texas Bus. & Com. Code Ann. § 2.313;

ss. Utah Code Ann. § 70a-2-313;

tt. Vermont Stat. Ann. Tit. 9a, § 2-313;

uu. Virginia Code Ann. § 59.1-504.2;

vv. Washington Rev. Code Ann. § 62a.2-313;

ww. West Virginia Code Ann. § 46-2-313;

xx. Wisconsin Stat. Ann. § 402.313; and

yy. Wyoming Stat. Ann. § 34.1-2-313.

230.   As a proximate result of the breach of warranties by Defendant, Plaintiffs and the other members of the Class did not receive goods as warranted. Plaintiffs and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiffs and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiffs and the Class members known the true facts, they would not have purchased the Product, or would have purchased Product on different terms.

231.   As a direct and proximate result of the foregoing, Plaintiffs and the proposed Class

have been damaged in an amount to be determined at trial.

## COUNT XI.
### [Violation of the Magnuson-Moss Warranty Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.* brought on behalf of Plaintiffs and proposed Class]

232.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

233.   Plaintiffs bring this claim on behalf of the other members of the Class for violation of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.* (the "Magnuson-Moss Act").

234.   Upon certification, the Class will consist of more than 100 named Plaintiffs.

235.   The Magnuson-Moss Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Magnuson-Moss Act], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal equitable relief." 15 U.S.C. § 2310(d)(1).

236.   At all relevant times, Plaintiffs and Class members were "consumers" as that term is defined in 15 U.S.C. § 2301 (3).

237.   At all relevant times, Defendant was a "supplier," as that term is defined in 15 U.S.C. § 2301(4), because it was a "person engaged in the business of making a consumer product directly or indirectly available to consumers."

238.   At all relevant times, Defendant was a "warrantor," as that term is defined in 15 U.S.C. §2301(5), because it was a "supplier or other person who gives offers to give a written warranty or who is or may be obligated under an implied warranty."

239.    The Products that Plaintiffs and the Class members purchased were "consumer products," as that term is defined in 15 U.S.C. § 2301(6), because the Products were "tangible personal property which is distributed in commerce and which is normally used or personal, family, or household purposes."

240.    By reason of Defendant's breach of its express warranties regarding the ability of the Products to be Angus "Steak," Defendant has caused economic damage to Plaintiffs and the Class members and has violated the statutory rights due to them under the Magnuson-Moss Act.

241.    As a direct and proximate result of the foregoing, Plaintiff and the proposed Class have been damaged in an amount to be determined at trial.


## COUNT XII.
### [Negligent Misrepresentation
brought on behalf of Plaintiffs and proposed Class]

242.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

243.    Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the class.

244.    In making the representations of fact to Plaintiffs and members of the class described herein, Defendants have failed to fulfill their duty to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

245.    Defendants, in making the misrepresentations and omissions, and in doing the acts

alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiff and members of the class.

246.   Plaintiffs and members of the class relied upon these false representations and nondisclosures by Defendants when purchasing the Products, which reliance was justified and reasonably foreseeable.

247.   As a result of Defendant's wrongful conduct, Plaintiffs and members of the class have suffered and continue to suffer economic loses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at the time of trial.

248.   As a direct and proximate result of the foregoing, Plaintiffs and the proposed Class have been damaged in an amount to be determined at trial.

## COUNT XIII.
### [Breach of Implied Warranty of Merchantability brought on behalf of Plaintiffs and proposed Class]

249.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

250.   Defendant is in the business of manufacturing, distributing, marketing and advertising the above listed products.

251.   Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiffs and Class Members that the Products include Angus "Steak".

252.   Defendant breached the implied warranty of merchantability in that Defendant's Products' ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Products if they knew that they actually contained beef "patty", not beef "steak".

253.   The inability of the Defendant's Products to meet the label description was wholly due to the Defendant's fault, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

254.   As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## COUNT XIV.
### [Breach of Implied Warranty of Fitness
### brought on behalf of Plaintiffs and proposed Class]

255.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

256.   Defendant knew or had reason to know that the Plaintiffs and other Class Members were buying its Products with the specific purpose of buying products that contained premium Angus "steak".

257.   Plaintiffs and the other Class Members, intending to eat a premium meat product, relied on the Defendant in selecting its Products to fit their specific intended use.

258.   Defendant held itself out as having particular knowledge of the Defendant's Products' ingredients.

259.   Plaintiffs' and Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular purpose was reasonable given Defendant's claims and representations in its advertising, packaging and labeling concerning the Products' ingredients.

260.   Plaintiffs and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products it manufactures and distributes.

261.   As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the Class, respectfully requests that this Court enter a judgment providing the following relief:

a)   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

b)   Designating Plaintiffs as representative of the Class or the respective Subclasses, and their undersigned counsel as Class Counsel;

c)   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d)   Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

e)   Awarding Plaintiffs and the Class restitution and any other equitable relief that may be appropriate;

f)    Awarding Plaintiffs and the Class their actual damages, treble damages,

punitive damages, attorney's fees and costs, including interest thereon, as

allowed or required by law;

g)    Finding that this action satisfies the prerequisites for maintenance as a class

action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

h)    Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: Flushing, New York
September 18, 2017

TROY LAW, PLLC
*Attorneys for the Plaintiffs, and
potential Rule 23 Class*

  /s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com