**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHUFEN CHEN, *et al.*, <br><br>           Plaintiffs, <br><br>     v. <br><br> DUNKIN' BRANDS, INC. (a Delaware Corporation)  d/b/a Dunkin' Donuts, <br><br>         Defendant. | No. 17-cv-03808-CBA-RER |

**DEFENDANT DUNKIN' BRANDS, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**ARNOLD & PORTER KAYE SCHOLER LLP**
Sean Morris
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
T:  +1 213.243.4000
F:  +1 213.243.4199
sean.morris@apks.com

Kyle D. Gooch
250 West 55th Street
New York, NY 10019-9710
T:  +1 212.836.8000
F:  +1 212.836.8689
kyle.gooch@apks.com

*Attorneys for Defendant*
*Dunkin' Brands, Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT .................................................................................................................... 3

I.  The nonresident plaintiffs' claims must be dismissed under Rule 12(b)(2) for lack
    of personal jurisdiction over Dunkin'. ................................................................... 3

    A.  Dunkin' is not subject to general jurisdiction in New York. ................................ 4

    B.  The Court lacks specific jurisdiction over Dunkin' with respect to
        the claims of the nonresident plaintiffs. .......................................................... 8

II. Plaintiff Chen's allegations fail to state a claim against Dunkin' upon which relief
    may be granted. ..................................................................................................... 10

    A.  Chen's GBL claims must be dismissed because she has not
        plausibly alleged that the Sandwiches' names would be deceptive
        to a reasonable consumer. .............................................................................. 11

        1.  As a matter of law, it is not deceptive for Dunkin' to use
            the term "Angus steak" to describe the Sandwiches because
            the Sandwiches contain Angus steak. ......................................................... 12

        2.  Chen's reliance on USDA regulations is misplaced, as they
            do not apply to restaurant foods. ................................................................. 15

        3.  Dunkin's practices are consistent with USDA regulations
            and guidance. .............................................................................................. 17

    B.  Chen's GBL claims must be dismissed because she fails to
        adequately allege that she suffered a legally cognizable injury........................... 19

    C.  Chen fails to state a claim under the Magnuson–Moss Warranty
        Act. ............................................................................................................... 22

III. Alternatively, Chen lacks standing to demand injunctive relief or to assert claims
     under the laws of all 50 States and the District of Columbia............................... 23

    A.  Chen lacks standing to pursue injunctive relief against Dunkin'. ....................... 24

    B.  Chen lacks standing to assert claims under the laws of all 50 states
        and the District of Columbia........................................................................... 26

CONCLUSION................................................................................................................ 27

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ackerman v. Coca-Cola Co.*,
    2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................................................................25

*Albert v. Blue Diamond Growers*,
    151 F. Supp. 3d 412 (S.D.N.Y. 2015) ............................................................................25, 26

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011) ..........................................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................11, 19, 20, 22

*Augsbury Corp. v. Petrokey Corp.*,
    470 N.Y.S.2d 787 (3rd Dep't 1983) ................................................................................6

*Beach v. Citigroup Alt. Invs. LLC*,
    2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ......................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................10, 11, 20, 22

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017) ..................................................................................................5

*Bonkowski v. HP Hood LLC*,
    2016 WL 4536868 (E.D.N.Y. Aug. 30, 2016) ................................................................7

*Bowling v. Johnson & Johnson*,
    665 F. Supp. 3d 371 (S.D.N.Y. 2014) ..........................................................................23

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,
    137 S. Ct. 1773 (2017) ..............................................................................................8, 9

*Broder v. MBNA Corp.*,
    281 A.D.2d 369 (1st Dep't 2001) ................................................................................11

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016) ........................................................................................5, 6

*Chang v. Fage USA Dairy Indus., Inc.*,
    2016 WL 5415678 (E.D.N.Y. Sept. 28, 2016) ............................................................25, 26

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
    90 F. Supp. 3d 97 (S.D.N.Y. 2015) ................................................................................7

Page(s)

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..................................................................................24, 25

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ...........................................................................4, 5, 6, 7

*Elkind v. Revlon Consumer Prods. Corp.*,
    2015 WL 2344134 (E.D.N.Y. May 14, 2015) .......................................25, 26

*Famular v. Whirlpool Corp.*,
    2017 WL 2470844 (S.D.N.Y. June 7, 2017) .............................................7

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ....................................................................11

*Frate v. Dunkin' Brands, Inc.*,
    2016 WL 3542402 (N.J. Super. Ct. Law Div. June 28, 2016) ...............22

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
    2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017) .........................................7

*Genuine Parts Co. v. Cepec*,
    137 A.3d 123 (Del. 2016) ........................................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) .............................................................................4, 5, 6, 7

*Gristede's Foods, Inc. v. Unkechauge Nation*,
    532 F. Supp. 2d 439 (E.D.N.Y. 2007) .....................................................11

*Gucci Am., Inc. v. Bank of China*,
    768 F.3d 122 (2d Cir. 2014) ....................................................................5

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
    2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015) ....................................25, 26

*In re Dental Supplies Antitrust Litig.*,
    2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) .........................................8

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .........................................23

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
    1 F. Supp. 3d 34 (E.D.N.Y. 2014) ..........................................................26

*International Shoe Co. v. State of Washington*,
    326 U.S. 310 (1945) ................................................................................6

Page(s)

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..........................................................20, 21, 22

*Justiniano v. First Student Mgmt. LLC*,
  2017 WL 1592564 (E.D.N.Y. Apr. 26, 2017) ...................................................................1, 7

*Kommer v. Bayer Consumer Health*,
  252 F. Supp. 3d 304 (S.D.N.Y. 2017)...............................................................24, 25, 26

*Lebron v. Encarnacion*,
  253 F. Supp. 3d 513 (E.D.N.Y. 2017) ...............................................................................4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...........................................................................................................24

*MacDermid, Inc. v. Deiter*,
  702 F.3d 725 (2d Cir. 2012)................................................................................................4

*Mantikas v. Kellogg Co.*,
  2017 WL 2371183 (E.D.N.Y. May 31, 2017) ...................................................................14

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
  84 F.3d 560 (2d. Cir. 1996)................................................................................................4

*Minholz v. Lockheed Martin Corp.*,
  227 F. Supp. 3d 249 (N.D.N.Y. 2016) ...............................................................................7

*Nelson v. MillerCoors, LLC*,
  246 F. Supp. 3d 666 (E.D.N.Y. 2017) ...............................................................................14

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)...............................................................................24, 25, 26

*Perkins v. Benguet Consol. Mining Co.*,
  342 U.S. 437 (1952).............................................................................................................5

*Sae Han Sheet Co. v. Eastman Chem. Corp.*,
  2017 WL 4769394 (S.D.N.Y. Oct. 19, 2017) ....................................................................7

*Simington v. Lease Fin. Grp., LLC*,
  2012 WL 651130 (S.D.N.Y. Feb. 28, 2012).....................................................................26

*Small v. Lorillard Tobacco Co.*,
  94 N.Y.2d 43 (1999) ..................................................................................................19, 20

*Smith v. Pizza Hut, Inc.*,
  2011 WL 2791331 (D. Colo. July 14, 2011) ....................................................................26

Page(s)

*Spratley v. FCA US LLC*,
 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ...................................................7, 9

*Stewart v. Riviana Foods Inc.*,
 2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ......................................................14

*Sullivan v. Barclays PLC*,
 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ............................................................7

*Taormina v. Thrifty Car Rental*,
 2016 WL 7392214 (S.D.N.Y. Dec. 21, 2016) ...............................................5, 6, 7

*Tomasino v. Estee Lauder Cos.*,
 44 F. Supp. 3d 251 (E.D.N.Y. 2014) .............................................................25, 26

*Verzani v. Costco Wholesale Corp.*,
 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir. 2011)..........13

*Weiss v. Inc. Vill. of Sag Harbor*,
 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) .............................................................3

*Wilderness USA, Inc. v. DeAngelo Bros. LLC*,
 265 F. Supp. 3d 301, 307–09 (W.D.N.Y. 2017) ................................................6, 7

*Wilson v. Frito-Lay N. Am., Inc.*,
 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ........................................................23

STATUTES

Magnuson–Moss Warranty Act,
 15 U.S.C. § 2301 *et seq.*.....................................................................10, 22, 23

New York Banking Law

 § 200...................................................................................................................7

New York Business Corporation Law

 § 304...................................................................................................................5

 § 305...................................................................................................................5

 § 1301.................................................................................................................5

 § 1304.................................................................................................................5

Page(s)

New York General Business Law

§ 349.................................................................................................1, 10, 11, 19, 26

§ 350.................................................................................................1, 10, 11, 19, 26

**REGULATIONS**

9 C.F.R. Part 317.................................................................................................16

§ 317.400(b).................................................................................................16

9 C.F.R. Part 319.................................................................................................15, 16

§ 319.15.................................................................................................15, 17

9 C.F.R. Part 381.................................................................................................17

§ 381.162.................................................................................................17

**RULES**

Fed. R. Civ. P. 8(a).................................................................................................20

Fed. R. Civ. P. 12(b)(1).................................................................................................1, 2, 23, 27

Fed. R. Civ. P. 12(b)(2).................................................................................................1, 3, 4, 27

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 2, 10, 27

**OTHER AUTHORITIES**

35 Fed. Reg. 15552 (Oct. 3, 1970).................................................................................................19

64 Fed. Reg. 2803 (Jan. 19, 1999).................................................................................................18

66 Fed. Reg. 4969 (Jan. 18, 2001).................................................................................................16

68 Fed. Reg. 44859 (July 31, 2003).................................................................................................16

80 Fed. Reg. 28153 (May 18, 2015).................................................................................................16

American Heritage Dictionary of the English Language, "Steak" (5th ed. 2016),
     https://ahdictionary.com/word/search.html?q=steak .................................................12

Dunkin' Donuts, "Angus Steak & Egg Sandwich," https://www.dunkindonuts.com/
     en/food-drinks/sandwiches-wraps/angus-steak-egg-cheese/ ..................................13

Merriam-Webster, "Steak," https://www.merriam-webster.com/dictionary/steak.....................12

Page(s)

U.S. Constitution, Fourteenth Amendment .................................................................9

Webster's New World College Dictionary "Steak," (5th ed. 2014),
     http://www.yourdictionary.com/steak...........................................................12

Wikipedia, "Hamburg steak," https://en.wikipedia.org/wiki/Hamburg_steak ............12

Wikipedia, "Salisbury steak," https://en.wikipedia.org/wiki/Salisbury_steak ............12

Defendant Dunkin' Brands, Inc. ("Dunkin'") respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs' Second Amended Complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In this lawsuit, plaintiffs are suing Dunkin' for advertising a steak sandwich. There is no dispute that the "Angus steak" breakfast sandwiches at issue are, in fact, made with real Angus beef. Plaintiffs simply take issue with Dunkin's recipe, which involves grinding the Angus steak, marinating it, and forming it into steak patties. Plaintiffs contend that the word "steak" necessarily implies that the sandwich is served with a single, intact piece of beef rather than a ground beef patty. Despite plaintiffs' best efforts—which have now included three iterations of the complaint—they have failed to state a viable claim for relief.

As a preliminary matter, four of the five plaintiffs cannot sue Dunkin' in this Court. Dunkin', a Delaware corporation headquartered in Massachusetts, is not subject to general jurisdiction in New York. Accordingly, only claims that arise from Dunkin's in-state activities may be litigated here. The nonresident plaintiffs have not pleaded any factual nexus between their claims and Dunkin's in-state activities. These plaintiffs' claims against Dunkin' should be dismissed without prejudice for lack of personal jurisdiction under Rule 12(b)(2).

Dunkin' does not dispute that the Court has personal jurisdiction over it to adjudicate the claims of the sole New York resident plaintiff, Chufen Chen. But despite multiple attempts at pleading, she has failed to state a claim against Dunkin' upon which relief may be granted.

Chen's claims under sections 349 and 350 New York General Business Law ("GBL") fail for two independent reasons. *First*, as a matter of law, it is not deceptive for Dunkin' to label a sandwich made with Angus steak as an "Angus steak" sandwich. Chen's allegations cannot be squared with the common definition of the word "steak," which is defined to include, among

other things, ground beef formed into a patty.  While Chen attempts to bolster her allegations by referencing USDA regulations, the regulations are irrelevant because they apply to raw food products and not to the names of food on restaurant menus.  In all events, the fact that the sandwiches are made with a ground beef patty is evident from Dunkin's ingredient statement and from the ubiquitous images of the products themselves in Dunkin's advertising.  *Second*, Chen's allegation that Dunkin's franchisees charge higher prices for the "Angus steak" sandwiches than they do for breakfast sandwiches without any form of beef is legally irrelevant and does not support Chen's conclusory allegation that she paid a price premium.

Finally, Chen lacks Article III standing to seek injunctive relief or to assert claims under the laws of all 50 states and the District of Columbia.  To the extent that any of Chen's claims survive scrutiny under Rule 12(b)(6), these portions of her complaint must be dismissed under Rule 12(b)(1).

## STATEMENT OF FACTS

Dunkin' is incorporated in the State of Delaware and has its principal place of business and global headquarters in Canton, Massachusetts.  SAC ¶ 19; Ex. 1 (Dunkin Brands Group, Inc. Annual Report (SEC Form 10-K)) at 1, 8, 22.[1]  Dunkin' is one of the world's leading franchisors of quick-service restaurants.  Indeed, the Dunkin' Donuts brand franchise is one of the largest retail chains in the United States.  SAC ¶ 20.  While Dunkin' is responsible for creating common food offerings for the Dunkin' Donuts chain, each restaurant is owned and operated by a franchisee.  SAC ¶¶ 21, 58.

Dunkin's product offerings include an Angus Steak & Egg Sandwich and an Angus Steak

---

[1]   "SAC" refers to plaintiffs' Second Amended Complaint (ECF Doc. No. 14).  All references to "Ex." are to the exhibits attached to the accompanying Declaration of Kyle D. Gooch dated January 11, 2018.

& Egg Snack N' Go Wrap (together, the "Sandwiches").  SAC ¶ 1.  Each product contains a ground "[b]eef [s]teak [p]atty" made of "Angus [b]eef" and a "[m]arinade."  Ex. 2 (Dunkin's ingredient statements); *see* SAC ¶ 48 (referencing ingredient statement).[2]  The marinade, in turn, is composed of various ingredients such as water, milk, wheat gluten, autolyzed yeast, hydrolyzed protein, triglyceride, glycerin, and other ingredients.  *Id.*  Dunkin' uses the word "steak" both in the Sandwiches' names and in television advertisements featuring the Sandwiches.  SAC ¶¶ 1, 63–102.

Plaintiffs are five consumers who allege that they have purchased the Sandwiches from Dunkin's franchisees on one or more occasions.  SAC ¶¶ 103–23.  They allege that Dunkin's use of the word "steak" is deceptive because consumers—despite the clear image in the advertising and the fact that the patty is clearly visible on the sandwich itself before purchase—will interpret "steak" to mean a single, intact piece of beef rather than a ground beef patty.  SAC ¶¶ 2, 52.  Plaintiffs contend that, as a result of Dunkin's allegedly deceptive marketing of the Sandwiches as "steak," Dunkin' charges a price premium for the Sandwiches above what it charges for other breakfast sandwiches made with pork products (bacon, sausage, or ham) or breakfast sandwiches with no meat.  SAC ¶¶ 5–6, 51, 105, 107, 110, 115, 118, 123.

## ARGUMENT

## I.   THE NONRESIDENT PLAINTIFFS' CLAIMS MUST BE DISMISSED UNDER RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION OVER DUNKIN'.

The claims of the nonresident plaintiffs should be dismissed pursuant to Rule 12(b)(2) because the Court lacks jurisdiction over Dunkin' in connection with those claims.  "[A]s the

---

[2]   The Court may consider Dunkin's ingredient statements for the Sandwiches because they are referenced in the Complaint.  *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (on a motion to dismiss, a court may consider, *inter alia*, "documents attached to [the complaint] or incorporated in it by reference" and "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference") (citation omitted).

party attempting to invoke the Court's jurisdiction, it is the [p]laintiff that bears the burden of showing that personal jurisdiction exists over the [d]efendant." *Lebron v. Encarnacion*, 253 F. Supp. 3d 513, 516 (E.D.N.Y. 2017). On a pre-discovery motion to dismiss pursuant to Rule 12(b)(2), the plaintiff must make a *prima facie* showing "based on legally sufficient allegations of jurisdiction." *Id.* (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d. Cir. 1996)). The Court must accept the allegations in the complaint "to the extent they are uncontroverted by the defendant's affidavits." *Id.* (quoting *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).

Here, the nonresident plaintiffs have not and cannot make a *prima facie* showing of jurisdiction over Dunkin'. As explained below, the Court lacks general jurisdiction over Dunkin', a Delaware corporation headquartered in Massachusetts. While Dunkin' does not dispute that the Court has specific jurisdiction over Dunkin' with respect to the claims of plaintiff Chen, a New York resident, the Court lacks specific jurisdiction over Dunkin' with respect to the claims of the remaining plaintiffs, who are not New York residents and whose claims have no factual nexus to New York.

### A. Dunkin' is not subject to general jurisdiction in New York.

Dunkin is not subject to general jurisdiction in New York. A pair of recent Supreme Court decisions—*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)—have narrowed the circumstances under which an out-of-state corporation will be subject to general jurisdiction in a forum state. Under *Goodyear* and *Daimler*, the test is "whether that corporation's 'affiliations with the [forum state] are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 564 U.S. at 919). Thus, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is

4

incorporated or maintains its principal place of business—the 'paradigm' cases." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016); *see Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014).[3]

Here, there is no basis for general jurisdiction: Dunkin' is a Delaware corporation with its principal place of business in Massachusetts. Despite being on notice of Dunkin's general jurisdiction argument (*see* ECF Doc. Nos. 11 & 13), plaintiffs' Second Amended Complaint does not contain factual allegations of contacts between Dunkin' and New York that would be sufficient to render it "essentially at home" in New York. Plaintiffs merely allege that Dunkin's franchisees sell its products "throughout the State of New York and throughout the country." SAC ¶ 1. That lone allegation is legally insufficient to satisfy plaintiffs' "heavy burden" of demonstrating that Dunkin's contacts with New York present an "exceptional" case. *Brown*, 814 F.3d at 627; *see, e.g., Taormina v. Thrifty Car Rental*, 2016 WL 7392214, at *5 (S.D.N.Y. Dec. 21, 2016) (holding that a car rental agency was not subject to general jurisdiction in New York despite the fact that it derived "substantial revenue" from its "nearly 200 offices in New York").

Dunkin's registration to do business in New York under the state's business registration statutes[4] is not a basis for the exercise of general jurisdiction. To be sure, before *Goodyear* and *Daimler*, some courts had held that an out-of-state corporation was subject to general jurisdiction

---

[3]   The Supreme Court has suggested that *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), is an "exceptional" case that would justify the exercise of general jurisdiction over a corporation by a state other than its state of formation or principal place of business. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017); *Daimler*, 134 S. Ct. at 761 n.19. In *Perkins*, "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio," which "then became 'the center of the corporation's wartime activities.'" *BNSF Ry.*, 137 S. Ct. at 1558 1558 (quoting *Daimler*, 134 S. Ct. at 756 n.8, citing *Perkins*, 342 U.S. at 447–48). Plaintiffs here have not—and cannot—allege facts as exceptional as those presented in *Perkins*.

[4]   *See* N.Y. Business Corporation Law §§ 304, 305, 1301, 1304.

in New York if it registered to do business here.  *See Taormina*, 2016 WL 7392214, at *6 (citing *Augsbury Corp. v. Petrokey Corp.*, 470 N.Y.S.2d 787, 789 (3rd Dep't 1983)).[5]  However, the Second Circuit has recently expressed serious doubts as to the constitutionality of this approach, and a number of district courts have held that the consent-by-registration theory of general jurisdiction is no longer viable in the wake of *Goodyear* and *Daimler*.

In *Brown*, the plaintiff urged the court to hold that the defendant had implicitly consented to general jurisdiction in Connecticut by registering to do business in that state and appointing an agent for service of process.  814 F.3d at 622.  The Second Circuit declined to construe Connecticut's business registration and agent-appointment statute in such a manner, noting that it "would implicate Due Process and other constitutional concerns—concerns made more acute in the absence of a defendant corporation's explicit consent to the state's powers."  *Id.* at 626.  The court was also troubled by the expansive indications of a consent-by-registration theory, noting that "every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief."  *Id.* at 640.  Such an approach "would risk unravelling the jurisdictional structure envisioned in *Daimler* and *Goodyear* based only on a slender inference of consent pulled from routine bureaucratic measures that were largely designed for another purpose entirely."  *Id.* at 639.  The Second Circuit was able to avoid this constitutional question, however, because it was able to construe Connecticut's registration statute as not requiring the registrant's "consent to general jurisdiction in exchange for the right to do business in the state."  *Id.* at 641.

---

[5]     The court in *Wilderness USA, Inc. v. DeAngelo Bros. LLC*, 265 F. Supp. 3d 301, 307–09 (W.D.N.Y. 2017), examined the history of the consent-by-registration line of cases, finding that they were a relic of an earlier era of personal jurisdiction jurisprudence that predated the Supreme Court's landmark personal jurisdiction decision in *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945).

While the Second Circuit's decision in *Brown* did not resolve the issue, an overwhelming majority of district court decisions since *Daimler*—including all district courts to address the issue since *Brown*—have held that a foreign corporation that registers to do business in New York does not implicitly subject itself to general jurisdiction in New York. *See Sae Han Sheet Co. v. Eastman Chem. Corp.*, 2017 WL 4769394, at *6 (S.D.N.Y. Oct. 19, 2017); *Spratley v. FCA US LLC*, 2017 WL 4023348, at *4 (N.D.N.Y. Sept. 12, 2017); *Wilderness USA*, 265 F. Supp. 3d at 314; *Famular v. Whirlpool Corp.*, 2017 WL 2470844, at *4–5 (S.D.N.Y. June 7, 2017); *Justiniano v. First Student Mgmt. LLC*, 2017 WL 1592564, at *6 (E.D.N.Y. Apr. 26, 2017); *Minholz v. Lockheed Martin Corp.*, 227 F. Supp. 3d 249, 264–65 (N.D.N.Y. 2016); *Taormina*, 2016 WL 7392214, at *7; *Bonkowski v. HP Hood LLC*, 2016 WL 4536868, at *3–4 (E.D.N.Y. Aug. 30, 2016); *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015)*; see also FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *4–5 (S.D.N.Y. Aug. 18, 2017) (registration under N.Y. Banking Law § 200 was insufficient to confer general jurisdiction on foreign bank); *Sullivan v. Barclays PLC*, 2017 WL 685570, at *39 (S.D.N.Y. Feb. 21, 2017) (same); *accord Genuine Parts Co. v. Cepec*, 137 A.3d 123, 147–48 (Del. 2016) (overruling, in light of *Goodyear* and *Daimler*, prior holding that registration under Delaware statute was sufficient to confer general jurisdiction over out-of-state corporation).[6]  This Court, too, should reject such a constitutionally problematic interpretation of the New York business registration statutes.

---

[6]    In *dicta*, one district court stated, without analysis, that, "[n]otwithstanding [*Goodyear* and *Daimler*], a corporation may consent to jurisdiction in New York … by registering as a foreign corporation and designating a local agent." *Beach v. Citigroup Alt. Invs. LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014).  This observation was irrelevant for purposes of the court's opinion because the defendant at issue "[was] not registered to do business in New York." *Id.* at *7.  Other courts have declined to follow the *Beach* court's pronouncement on this issue. *See, e.g.*, *Sae Han Sheet Co.*, 2017 WL 4769394, at *6; *Famular*, 2017 WL 2470844, at *5; *Taormina*, 2016 WL 7392214, at *6–7.

In sum, plaintiffs have not met their burden of establishing that Dunkin' is subject to general jurisdiction in New York, either as the result of its business activities in this state or as the result of its registration to do business here.

**B.    The Court lacks specific jurisdiction over Dunkin' with respect to the claims of the nonresident plaintiffs.**

Absent general jurisdiction, each plaintiff must establish that the Court has specific jurisdiction over Dunkin' with respect to his or her claims—*i.e.*, that his or her claims arise out of or relate to Dunkin's contacts with the State of New York. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) ("*BMS*"). Put differently, there must be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum [s]tate." *Id.* at 1781 (citation, internal quotation marks, and brackets omitted). The fact that the plaintiffs have filed their claims as representatives of a putative nationwide class action is irrelevant to the specific jurisdiction inquiry. *See In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process does not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case.").

The Supreme Court's recent decision in *BMS* demonstrates that specific jurisdiction must be shown on a plaintiff-by-plaintiff basis. *BMS* involved a group of lawsuits filed against a pharmaceutical company in California state court by numerous plaintiffs, some of whom were California residents and some of whom resided elsewhere. 137 S. Ct. at 1778. All plaintiffs had taken the defendant's drug and alleged similar injuries. *Id.* The defendant was a Delaware corporation headquartered in New York, and thus was not subject to general jurisdiction in the forum state. *Id.* at 1777–78. The California Supreme Court nonetheless held that it could

exercise specific jurisdiction over the pharmaceutical company with respect to the nonresident plaintiffs because their claims "were similar in several ways to the claims of the California residents (as to which specific jurisdiction was uncontested)." *Id.* at 1779. The U.S. Supreme Court reversed, holding that California's exercise of specific jurisdiction over the nonresident plaintiffs' claims against BMS violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 1780–84. As the Court observed, "[t]he mere fact that other plaintiffs were prescribed, obtained, and ingested [the drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781. Absent "a connection between the forum and the specific claims at issue," the court lacked jurisdiction. *Id.*

In *Spratley*, another court in this Circuit applied *BMS* and dismissed the claims of nonresident plaintiffs in a putative multistate class action under circumstances indistinguishable from this case. The case involved eight individual plaintiffs, each of whom alleged that he or she purchased a Chrysler vehicle with the same safety defect. 2017 WL 4023348, at *1. Only one of the plaintiffs purchased his vehicle in New York; the rest purchased their vehicles out of state. *Id.* The plaintiffs argued that the court could exercise specific jurisdiction over the out-of-state plaintiffs' claims because they were similar to that of the New York resident plaintiff in that they stemmed from the same nationwide pattern of conduct by the defendant. *Id.* at *6. Applying *BMS*, the court rejected this approach, holding that it lacked specific jurisdiction over the claims of the out-of-state plaintiffs. *Id.* at *5–8.

Here, Dunkin' does not dispute that the sole New York resident plaintiff, Chen, has alleged suit-related contacts with New York to establish specific jurisdiction. But the remaining plaintiffs have not. Indeed, despite being on notice of Dunkin's intention to challenge personal

jurisdiction, the Second Amended Complaint contains not a single allegation tying the claims of the nonresident plaintiffs to any alleged conduct by Dunkin' in New York.  Rather, each of the nonresident plaintiffs alleges that he or she was exposed to the challenged advertising and was allegedly injured in his or her home state, with no factual nexus to New York.  *See* SAC ¶¶ 15, 108–110 (plaintiff Evanson alleging that he purchased a Sandwich in his home state of Massachusetts); *id.* ¶¶ 16, 111–15 (plaintiff Johnson alleging that she purchased Sandwiches in her home state of Florida); *id.* ¶¶ 17, 116–18 (plaintiff Buscholtz  alleging that he purchased Sandwiches in his home state of Michigan); *id.* ¶¶ 18, 119–23 (plaintiff Beattie alleging that she purchased Sandwiches in her home state of California).

## II.   PLAINTIFF CHEN'S ALLEGATIONS FAIL TO STATE A CLAIM AGAINST DUNKIN' UPON WHICH RELIEF MAY BE GRANTED.

The dismissal of the nonresident plaintiffs leaves only the claims of the sole New York resident plaintiff, Chen.  She has asserted claims for violation of GBL sections 349 and 350 (Counts I, II, and VIII)[7] and for violation of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA") (Count IX).  For the reasons set forth below, each of these claims is legally deficient.[8]

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court

---

[7]   Count VIII purports to state a claim under the consumer fraud statutes of all fifty states and the District of Columbia.  SAC ¶¶ 192–202.  As explained below (Point III.B), Chen's claim arises under New York law and she lacks Article III standing to assert claims under the laws of other jurisdictions.

[8]   Even if the Court had jurisdiction to adjudicate the claims of the nonresident plaintiffs, their claims under the consumer fraud statutes of their respective states would fail for the same reasons as Chen's claim under the GBL.  Similarly, the deficiency in Chen's claim under the MMWA is common to all plaintiffs.

explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must do more than plead facts that are "'merely consistent with' a defendant's liability" or that show "sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556–57).  While the Court must accept all well-pleaded factual allegations, it is not required to accept the truth of "legal conclusions," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "'formulaic recitation[s] of the elements of a cause of action.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Applying these standards here, plaintiff Chen has failed to state a claim upon which relief may be granted.

> ### A.  Chen's GBL claims must be dismissed because she has not plausibly alleged that the Sandwiches' names would be deceptive to a reasonable consumer.

To state a claim for relief under sections 349 or 350 of the GBL, a plaintiff must allege that the defendant's advertisement is "deceptive" in that it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see also Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007) (Amon, J.) (standards under sections 349 and 350 are "substantively identical").  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741. In making that determination, "context is crucial" because "[t]here can be no [GBL] claim when the allegedly deceptive practice was fully disclosed." *Id.* at 742 (quoting *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371 (1st Dep't 2001)).  Chen has not and cannot meet her burden of pleading that the term "Angus steak" is a deceptive name for a sandwich that is made with Angus steak.

1.      **As a matter of law, it is not deceptive for Dunkin' to use the term "Angus steak" to describe the Sandwiches because the Sandwiches contain Angus steak.**

Chen does not allege that the Sandwiches' names are false.  She does not dispute (nor could she) that the Sandwiches do not contain real Angus steak.  Instead, Chen contends that the term "Angus steak" is misleading because a reasonable consumer would expect that the word "steak" refers to a single, intact piece of beef rather than a ground beef patty.  *See* SAC ¶¶ 2, 26.

*First*, the word "steak" is defined to include, among other things, a non-intact beef product, such as a ground steak patty.  Indeed, many commonly used dictionaries include a definition of "steak" that includes ground beef:

- "ground beef prepared for cooking or for serving in the manner of a steak"[9]

- "patty of ground meat broiled or fried"[10]

- "ground beef formed into a patty for broiling or frying"[11]

The beef in the Sandwiches—which consists of Angus steak that has been ground, marinated, and formed into a patty—falls squarely within these definitions.  Moreover, ground beef products are regularly referred to as hamburger steak[12] or Salisbury steak.[13]  Thus, contrary to Chen's suggestion, a reasonable consumer would not be deceived by Dunkin's advertising because a reasonable consumer would not define the term "steak" to refer *exclusively* to a single,

---

[9]   "Steak," Merriam-Webster, https://www.merriam-webster.com/dictionary/steak.

[10]   "Steak," The American Heritage Dictionary of the English Language (5th ed. 2016), https://ahdictionary.com/word/search.html?q=steak.

[11]   "Steak," Webster's New World College Dictionary (5th ed. 2014), http://www.yourdictionary.com/steak.

[12]   "Hamburg steak," Wikipedia, https://en.wikipedia.org/wiki/Hamburg_steak.

[13]   "Salisbury steak," Wikipedia, https://en.wikipedia.org/wiki/Salisbury_steak.

intact cut of beef, as Chen contends in her complaint.  *See* SAC ¶ 2.

**Second**, even if there were doubt in a reasonable consumer's mind about whether the term "Angus steak" referred to a ground beef patty or an intact cut of beef, it would be dispelled by the ubiquitous images of the Sandwiches in Dunkin's advertising.  A prior version of Chen's own complaint contains numerous screenshots of Dunkin's advertising that include close-up images of the Angus steak patty.  *See* ECF Doc. No. 6, Am. Compl. at 12–14, 17–21.[14]  This additional context further demonstrates that it would be unreasonable for a consumer exposed to Dunkin's advertising to expect to receive a single, intact piece of beef.  *See Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499, at *2–3 (S.D.N.Y. Sept. 28, 2010) (dismissing claim that the "net weight" description on "Shrimp Tray" product was misleading because "[a] reasonable consumer would not believe that the net weight disclosed on the label for the Shrimp Tray refers to only the shrimp," particularly where the items being purchased were revealed to any consumer through the "clear plastic top"), *aff'd*, 432 F. App'x 29 (2d Cir. 2011).  Moreover, the product is one where the type of patty being purchased is readily apparent to the customer at the time of purchase.  The Sandwiches are not in a sealed box or container; they are sold openly at the stores where they can be seen by any consumer.

**Third**, the term "Angus steak" is not deceptive when considered in conjunction with Dunkin's ingredient statements for the Sandwiches.  Ex. 2.  These statements are publicly available at Dunkin's website[15] and, indeed, are referenced in Chen's own complaint.  *See* SAC

---

[14]   While Chen apparently omitted these images from the most recent iteration of her complaint, the Court can consider the advertisements themselves, which are still cited and described in detail in the operative complaint.  *See* SAC ¶¶ 61–102 & nn.1–3; *see also Weiss*, 762 F. Supp. 2d at 567.

[15]   *See* Dunkin' Donuts, "Angus Steak & Egg Sandwich," https://www.dunkindonuts.com/en/food-drinks/sandwiches-wraps/angus-steak-egg-cheese/.

13

¶ 48.  The ingredient statements disclose that the Sandwiches features a "Beef Steak Patty," which is made of "Angus Beef" and a "Marinade."  Ex. 2.  Given this disclosure,  a reasonable consumer would not conclude that the "Beef Steak Patty" refers to a single, intact piece of beef. *See, e.g.*, *Mantikas v. Kellogg Co.*, 2017 WL 2371183, *4–5 (E.D.N.Y. May 31, 2017) (rejecting, as a matter of law, allegation that the statement "made with whole grain" deceptively implied that the product was 100% whole grain because the packaging disclosed that the product contained five or eight grams of whole grain per serving, which was true); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 673–76 (E.D.N.Y. 2017) (dismissing complaint alleging that slogan "Foster's Australian for Beer" deceptively conveyed that the product was imported from Australia because, *inter alia*, "[Fort Worth, TX] is displayed on the Foster's webpage, which is inarguably clear as to the brewing location"); *Stewart v. Riviana Foods Inc.*, 2017 WL 4045952, at *9–10 (S.D.N.Y. Sept. 11, 2017) (dismissing complaint alleging that a package's size deceptively suggested that it contained 16 ounces of pasta because the actual weight was printed on the front of the package, making it unreasonable for a consumer to assume the package contained 16 ounces).

**Fourth**, the fact that reasonable consumers are not misled or injured by the term "Angus steak" is readily apparent from plaintiffs' own pleadings, which disclose a pattern of repeat purchases.  Plaintiff Evanson, for example, alleged that she "would purchase [two] or [three] 'Angus Steak and Egg Bagels' each week they were sold" over the course of an eight-year period.  ECF Doc. No. 6, Am. Compl. ¶ 107.[16]  Plaintiff Beattie alleged that she purchased two Sandwiches every Friday over a period of more than six weeks.  *Id.* ¶¶ 132–34.  Chen herself alleges that she purchased the Sandwiches on at least two separate occasions.  *Id.* ¶¶ 102, 104.  It

---

[16]   This allegation was quietly dropped from plaintiffs' Second Amended Complaint after defendant's counsel remarked on these types of repeated sales during the pre-motion conference.

is simply not plausible for plaintiffs to allege that even after purchasing, seeing, touching, and consuming the Sandwiches, they still understood the term "Angus steak" to mean a single, intact piece of beef. The only plausible explanation is that the plaintiffs were aware that the Sandwiches did not contain a single, intact piece of beef, but continued to purchase them anyway.

In sum, Chen has not plausibly alleged that a reasonable consumer, viewing Dunkin's advertising in its full context, is likely to be deceived by Dunkin's description of the Sandwiches as "Angus steak" when they do, in fact, contain Angus steak.

### 2. Chen's reliance on USDA regulations is misplaced, as they do not apply to restaurant foods.

To support her argument that a reasonable consumer would be misled by Dunkin's use of the term "steak," Chen suggests that "one should look to the definition and/or description from regulatory agencies, including the [USDA], for their guidance." SAC ¶ 27. In particular, Chen relies heavily on the standards for identity developed by the USDA's Food Safety and Inspection Service ("FSIS") for "Miscellaneous beef products," which are codified at 9 C.F.R. § 319.15. But these standards of identity do not apply to restaurant foods and thus do not speak to the issue of how a restaurant should describe an item on its menu or in advertising. Rather, as the title for Subpart B of Part 319 makes clear, the standards of identity apply only to "Raw Meat Products." Chen's own complaint acknowledges that the regulations she cites refer to the sale of raw beef products (*see* SAC ¶¶ 29–37), and she fails to explain the relevance of these regulations to restaurants like those operated by Dunkin's franchisees, which do not sell raw beef but instead sell beef as part of a cooked menu item. In fact, the USDA has not adopted any regulations that purport to require a restaurant like Dunkin' to identify or describe particular cooked beef products in a particular manner on menus or in advertising.

The irrelevance of the Part 319 standards of identity to restaurant menus is confirmed by the USDA's position with respect to analogous nutritional labeling requirements in Part 317. USDA regulations expressly provide that "[r]estaurant menus generally do not constitute labeling or fall within the scope of [USDA nutrition labeling] regulations." 9 C.F.R. § 317.400(b). Echoing this provision, the USDA stated in a preamble to a 2001 proposed rule on Nutrition Labeling of Ground or Chopped Meat and Poultry Products and Single-Ingredient Products that, "[l]ikewise, restaurant menus that include ground or chopped products generally do not constitute nutrition labeling or fall within the scope of these regulations." 66 Fed. Reg. 4969, 4979 (Jan. 18, 2001).

Indeed, when commenters have asked USDA to apply labeling requirements to restaurant food, USDA has declined to do so. For example, commenters on a rule regarding descriptive designations for mechanically tenderized beef products urged USDA to require restaurants to disclose on their menu if a restaurant product was made from mechanically tenderized beef so as to enable consumers to make informed decisions about how their food should be prepared. 80 Fed. Reg. 28153, 28160 (May 18, 2015). USDA deferred to the U.S. Food and Drug Administration ("FDA") on the question, saying it would share these comments with FDA instead. *Id.* In other rulemakings, USDA has rejected the assertion that packaged foods and restaurant foods of the same type (such as pizza from the frozen food aisle and pizza from a restaurant) ought to be subject to the same labeling standards. *See, e.g.*, Definitions and Standards of Identity or Composition:  Elimination of the Pizza with Meat or Sausage Standards, 68 Fed. Reg. 44859, 44860 (July 31, 2003) (emphasizing that restaurant pizzas and packaged pizzas are subject to different regulatory requirements).

### 3.     Dunkin's practices are consistent with USDA regulations and guidance.

Even if USDA regulations and guidance concerning non-restaurant foods were applicable to the sale by Dunkin's franchisees to consumers—and, as explained above, they are not— Dunkin's practices are nevertheless fully consistent with USDA regulations and guidance.  As an initial matter, Dunkin's ingredient statements appropriately describe the meat portion of the Sandwiches as a "Beef Steak Patty."  Ex. 2.  USDA does not prohibit identifying the source of the beef in the product in the product name of a fast food sandwich (*i.e.*, "(kind) steak," such as "Angus steak") where the ingredient list appropriately describes the form of beef used.

The fact that USDA has sought to address confusion in other related areas demonstrates that USDA does not consider using the phrase "Angus steak" in the product name for a sandwich that contains non-intact beef to be misleading to consumers.  USDA has created standards of identity for the beef and poultry product names that it believes could otherwise create confusion for consumers.  For example, USDA had a concern about confusion over the use of "(Kind) steak" in the poultry context.  In response, USDA created a standard for labeling a poultry product as "(Kind) steak or filet" at 9 C.F.R. § 381.162, under the Poultry Products Inspection Regulations, codified at 9 C.F.R. Part 381.

In contrast, the standards of identity for beef  created by USDA do not include a standard of identity for packaged beef products labeled as "(kind) steak" (such as "Angus Steak").  Instead, they only include standards for "Raw Meat Products" that are labeled as any of the following: "Chopped beef, ground beef"; "Hamburger"; "Beef patties"; "Partially defatted beef fatty tissue"; and "Fabricated steak" such as "Beef Steak, Chopped, Shaped, Frozen," "Minute Steak, Formed, Wafer Sliced, Frozen," or "Veal Steaks, Beef Added, Chopped—Molded— Cubed—Frozen, Hydrolyzed Plant Protein, and Flavoring."  9 C.F.R. § 319.15

USDA could (and would) have implemented a parallel beef regulation to the "(kind) steak" poultry regulation if the agency thought that it was necessary.  But it did not.  Perhaps it is unsurprising, then, that the only other reference to USDA guidance on beef products that Chen could identify that distinguishes the treatment of intact and non-intact cuts of beef is completely unrelated to food labeling.  Chen cites to USDA discussion of "steak" in the preamble of the final rule on Beef Products Contaminated with *Escherichia Coli* O157:H7.  SAC ¶ 34 (citing 64 Fed. Reg. 2803 (Jan. 19, 1999)).  There is no support, however, for Chen's position that this rulemaking restricts the use of the word "steak" in the product name of fast-food products containing beef.  Rather, in the preamble cited, USDA differentiates between "non-intact beef" cuts and "intact beef cuts" in order to describe how pathogens might penetrate those products differently.  64 Fed. Reg. 2803–04.  USDA says these distinctions are important for the purpose of distinguishing which products would require additional processing if contaminated with *e. coli*—not for determining whether a restaurant consumer would be misled by a non-intact beef product labeled as "steak" or "(kind) steak."   *See id.*  For these reasons, Chen's allegation that Dunkin's sandwich product naming conventions are somehow violative of USDA regulations can be easily rejected.

Relatedly, there is no standard of identity for the term "steak" alone.  Perhaps this is because, as USDA guidance suggests, USDA expects consumers to understand "steak" to encompass a variety of product types.  In the preamble to a final rule that updated the beef product standards of identity cited above, USDA acknowledges that consumers historically have understood "steak" to include products containing non-intact cuts of meat (not only intact cuts).  USDA writes:

> About 30 years ago, there began the large volume production of
> products made in the same way as, and otherwise resembling,

> 'hamburger' but which consisted of other meats as well as beef.
> These products were labeled for example as 'Chopped veal.'
> During World War II, the term 'Steak' became associated with
> similar products that were made from chopped meat in patty form.

35 Fed. Reg. 15552, 15553 (Oct. 3, 1970).  Had USDA felt the need to create a separate standard

for a packaged product labeled as "(kind) steak," where "(kind)" refers to the product's origin (as

with "Angus steak"), or for all beef products labeled as "steak," USDA would have done so.

     In sum, Chen not only relies upon irrelevant regulations governing raw foods, but she

then misinterprets those regulations.  The contentions in her complaint concerning the nature and

effect of USDA regulations are legal conclusions that need not be accepted by the Court on a

motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Stripped of these irrelevant regulations, Chen's

complaint boils down to her assertion that it is misleading to call a steak sandwich a steak

sandwich.  That is not a plausible allegation of deception, and her GBL claims should be

dismissed on this ground alone.

     **B.**    **Chen's GBL claims must be dismissed because she fails to adequately allege
that she suffered a legally cognizable injury.**

     Chen's GBL claims are deficient for the additional reason that she fails to allege a legally

cognizable injury.  To state a claim under sections 349 or 350 of the GBL, a plaintiff must allege

(and ultimately prove) that he or she suffered "actual" harm as a result of the defendant's alleged

conduct.  *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55–56 (1999).  In *Small*, the

plaintiffs alleged that they were injured because they were exposed to the defendant cigarette

manufacturer's deceptive advertising because if they had known the truth about the addictive

nature of nicotine, they would not have purchased the defendant's cigarettes.  *Id.* at 56.  The New

York Court of Appeals rejected this "deception as injury" argument, holding that the plaintiffs

had failed to allege that they suffered "either pecuniary or 'actual' harm."  *Id.*  The court noted

that the plaintiffs had not alleged that the deception caused an inflated price.  *Id.* at 56 & n.5.

Courts have interpreted *Small* to permit plaintiffs to plead GBL injury based on a "price premium" theory, where the plaintiff properly alleges that she paid more for a product as the result of the defendant's alleged deceptive conduct. Yet a price premium allegation, just like any other allegation, must be pleaded consistent with Rule 8(a) in that it cannot consist of merely "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 555 U.S. at 557).

For example, in *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016), the plaintiff brought a putative class action against a candy manufacturer for allegedly misleading consumers with "slack-fill," *i.e.*, packaging that "contains needless empty space." *Id.* at *3. The plaintiff repeatedly alleged that he paid a "premium" for the defendant's Sour Patch Kids Watermelon candy. *Id.* at *7. In support of his price premium theory, the plaintiff alleged that the defendants' candy was "more expensive per ounce than other sweets on the market." *Id.* The court held that the plaintiff had failed to adequately plead a price premium, noting that "[c]omparing [Sour Patch Kids Watermelon] to Hot Tamales and Junior Mints is the saccharine equivalent of comparing apples with oranges." *Id.*

Here, Chen alleges that she "paid a fifty cents ($.50) premium for her 'Angus Steak and Egg Bagel' over the Classic Egg and Cheese Bagel (with Ham, Bacon or Sausage)," and that she "paid a sixty cents ($.60) premium for her 'Angus Steak and Egg wrap' over the Classic Egg and Cheese wrap (with Ham, Bacon or Sausage)." SAC ¶¶ 105, 107.[17] In other words, Chen measures the premium she allegedly paid by the difference in price of the Sandwiches—which, as noted above, contain real Angus beef—to the prices of other breakfast sandwiches that contain pork products. This is precisely the type of apples-to-oranges comparison that was rejected as

---

[17] Chen's allegation that Dunkin's labeling induced her to buy the Sandwiches (SAC ¶ 143) is not a legally cognizable injury. *See Small*, 94 N.Y.2d at 55–56.

20

legally irrelevant in *Izquierdo*.  Moreover, Chen's price "premium" is not causally related to

Dunkin's alleged deception because it has nothing to do with a difference in value or price (if

any) between an intact piece of "Angus steak" and a piece of Angus beef that has been ground,

marinated, and formed into a "beef steak patty."

After learning of Dunkin's plan to seek dismissal on this ground, Chen attempted to

bolster her claim by adding two new allegations to her complaint, but neither is sufficient.  The

first new allegation is:

> Plaintiffs and Class Members paid a premium for the Products over
> and above their value because Defendants distinguished "Angus
> Steak" Products from other beef products and from other meat
> products, including their own, and because Defendants marketed
> and advertised "Angus Steak" as a high-quality beef product in
> sandwich form.

SAC¶ 4.  This is merely a conclusory allegation of a price premium paired with a non sequitur;

whether Dunkin's advertising "distinguished" between "Angus Steak" and other types of meat

does not speak to the issue of whether Chen paid more for the Sandwiches than she would have

if they were labeled as containing, for example, an "Angus Beef Patty."

The next new allegation fares no better.  It reads:

> That Plaintiffs and Class Members paid a premium for the
> Products over and above their value can be seen from comparing
> the value of the Products to competitors' products that include
> slices cut from intact cuts of beef.

SAC ¶ 5.  This vague allegation is devoid of any specific facts that might tend to show an actual

price premium.  The complaint does not identify which competitors or products are being

compared to the Sandwiches.  Chen fails to allege any concrete facts, even by way of example.

Indeed, all Chen has done is parroted back the definition of a price premium in the most

conclusory fashion.  This type of "'formulaic recitation of [an] element[] of a cause of action'" is

not sufficient to bring Chen's price premium allegation to the level of "facial plausibility."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 555 U.S. at 555).

Chen's price premium allegation is futile for another reason:  the prices that Chen paid were set, under the terms of the franchise agreements, by Dunkin's franchisees, not Dunkin' itself.  *See Frate v. Dunkin' Brands, Inc.*, 2016 WL 3542402, at *3 (N.J. Super. Ct. Law Div. June 28, 2016) ("each … franchise is responsible for setting prices").  Chen does not allege otherwise.  The closest she comes is a vague allegation that Dunkin' "creates, maintains and enforces strict uniform standards and practices for … its … prices," without any explanation for what she means by "standards and practices."  SAC ¶ 21.  Without a clear allegation that Dunkin' set retail prices for the Sandwiches or benefited from the alleged premium, Chen's price premium theory fails.  *See Izquierdo*, 2016 WL 6459832, at *7 (holding that the plaintiff's injury allegations were deficient for the additional reason that the complaint did not state whether the defendant or the retailer set the price of the candy).

### C.     Chen fails to state a claim under the Magnuson–Moss Warranty Act.

In Count IX of her complaint, Chen alleges that Dunkin' is liable under the MMWA because it allegedly breached "express warranties regarding the ability of the [Sandwiches] to be 'Angus Steak.'"  SAC ¶ 211.  Dunkin's use of the term "Angus steak" to describe the Sandwiches is just that—a product description—and not an actionable warranty.

Under the MMWA, a "warranty" is defined, in relevant part, as "any written affirmation of fact or written promise … which relates to the nature of the material or workmanship and affirms or promises that [1] such material or workmanship is defect free or [2] will meet a specified level of performance over a specified period of time."  15 U.S.C. § 2301(6) (emphasis added).  This definition is narrowly drawn to effectuate the purposes of the act.  As one Court explained, adopting a broad interpretation of what constitutes a "warranty" under the act would "transform all labels into warranties," which would mean that "virtually any grievance about a

22

consumer product—food or drug—would be actionable under the MMWA.  That is not how the statute was meant to work."  *Bowling v. Johnson & Johnson*, 665 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) (dismissing MMWA claim against mouthwash manufacturer and holding that the label "Restore Enamel" "explains how [the product] works" but did not fall under the statutory definition of warranty).

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013), is instructive.  There, plaintiffs brought a putative class action alleging that the defendants misleadingly labeled their snack foods as "All Natural" when they contained unnatural ingredients.  *Id.* at *1.  The court dismissed plaintiffs' MMWA claim, concluding that the "All Natural" label was not a warranty because it did not promise "a product free from defect" or "that the product will meet a specified level of performance over a specified period of time." *Id.* at *17 (citation and internal quotation marks omitted).  "Such labels," the court concluded, were "at most, product descriptions."  *Id.* (quoting *Wilson v. Frito-Lay N. Am., Inc.*, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013)).

Here, too, Dunkin's use of the term "Angus steak" does not constitute a warranty under the MMWA.  The term is neither a written affirmation that the Sandwiches are free from defect nor a promise that the Sandwiches will meet a specified level of performance over a specified period of time.  Accordingly, plaintiffs have not stated a claim for relief under the MMWA.

## III.  ALTERNATIVELY, CHEN LACKS STANDING TO DEMAND INJUNCTIVE RELIEF OR TO ASSERT CLAIMS UNDER THE LAWS OF ALL 50 STATES AND THE DISTRICT OF COLUMBIA.

As explained above, Chen has failed to state a claim for relief and the complaint should be dismissed in its entirety.  In the alternative, Dunkin' moves pursuant to Rule 12(b)(1) to dismiss portions of the complaint for lack of standing.  Under Rule 12(b)(1), the plaintiff "bears the burden of establishing standing 'in the same way as any other matter on which [it] bears the

burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  Plaintiff Chen cannot meet this burden with respect to (1) her request for injunctive relief against Dunkin' and (2) her assertion of a claims for relief under the laws of all 50 states and the District of Columbia.

### A.    Chen lacks standing to pursue injunctive relief against Dunkin'.

A plaintiff lacks Article III standing to pursue injunctive relief where he or she is "unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.*

In *Nicosia*, the Second Circuit held that a consumer lacked Article III standing to seek injunctive relief to block an online retailer from selling an allegedly unsafe weight-loss drug because he did not "establish a likelihood of future or continuing harm" from the retailer's alleged conduct. *Id.* Among other things, the Second Circuit noted that the plaintiff "has not shown that he is likely to be subjected to further sales by [the defendant] of products containing [the allegedly dangerous weight-loss drug]," nor had he alleged that he intended to buy weight-loss products from the defendant in the future. *Id.*

Numerous district courts in this Circuit have similarly held that a consumer fraud plaintiff lacks standing to seek injunctive relief where he or she is fully aware of the allegedly deceptive practice at issue and, as a result, cannot allege a risk of future harm. *See, e.g.*, *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) ("the Complaint fails to demonstrate how Plaintiff is likely to be subject to any future or continuing harm from the

24

Defendant"); *Chang v. Fage USA Dairy Indus., Inc.*, 2016 WL 5415678, at *5 (E.D.N.Y. Sept.

28, 2016) ("Although Plaintiffs allege that Defendant's misleading conduct continues, they have

not alleged that they will purchase the [the accused products] in the future.  These allegations are

insufficient to establish a likelihood of future injury because Plaintiffs cannot rely on past

injury."); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418 (S.D.N.Y. 2015)

("Plaintiffs do not have standing to seek injunctive relief because they have not alleged that they

will purchase Defendants' almond milk labeled products in the future."); *In re Avon Anti-Aging*

*Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, 2015 WL 5730022, at *8 (S.D.N.Y.

Sept. 30, 2015) ("Plaintiffs are unlikely to buy the class products again, and do not allege

otherwise in their complaint.  Accordingly, they lack standing to seek a forward-looking

injunction."); *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *3 (E.D.N.Y.

May 14, 2015) ("Plaintiffs are now aware of the alleged misrepresentations that they challenge,

so there is no danger that they will again be deceived by them."); *Tomasino v. Estee Lauder*

*Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("[Plaintiff] has not alleged a sufficient future

injury to establish standing to assert her claims for injunctive relief because she has demonstrated

that she is, in fact, unlikely to purchase [the products at issue] again.").[18]

Here, despite being on notice of Dunkin's challenge to her standing to pursue injunctive

relief (*see* ECF Doc. No. 11 at 3), Chen has alleged no facts that establish a likelihood of future

injury with respect to Dunkin's alleged labeling.  Chen does not allege, for example, that she

intends to continue visiting Dunkin' Donuts brand franchise locations or that she intends to

---

[18]   While some district courts have allowed consumer fraud plaintiffs to pursue injunctive
relief despite a lack of any allegation of intent to purchase the defendant's product in the future,
*e.g.*, *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013),
these cases cannot be reconciled either with the Supreme Court's holding in *Lyons* or the Second
Circuit's recent holding in *Nicosia*, both of which are controlling precedent.  Such cases also go
against the "weight of [district court] authority in this Circuit."  *Kommer*, 252 F. Supp. 3d at 310.

purchase the Sandwiches in the future.  Indeed she alleges the opposite—that the "would not

have" purchased the Sandwiches but for Dunkin's use of the term "Angus steak."  SAC ¶ 195.

As in *Nicosia*, *Kommer*, *Chang*, *Albert*, *Avon*, *Elkind*, and *Tomasino*, Chen's failure to allege a

real threat of future injury precludes her from seeking injunctive relief.

### B.   Chen lacks standing to assert claims under the laws of all 50 states and the District of Columbia.

Chen lacks Article III standing to pursue Count VIII of her complaint, which purports to

assert a claim against Dunkin' under the consumer fraud statutes of all 50 states and the District

of Columbia.  *See* SAC ¶¶ 192–202.  Consistent with the standing requirements of Article III,

courts have held that plaintiffs "may only assert a state claim if a named plaintiff resides in, does

business in, or has some other connection to that state." *In re HSBC Bank, USA, N.A., Debit

Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014); *accord Simington v. Lease Fin.

Grp., LLC*, 2012 WL 651130, at \*9 (S.D.N.Y. Feb. 28, 2012).  This is true "even where they are

named plaintiffs in a purported class action," *Simington*, 2012 WL 651130, at \*9, because prior

to class certification, "the only relevant standing inquiry is that of the named plaintiffs," *In re

HSBC Bank*, 1 F. Supp. 3d at 49 (citation omitted).  "To hold otherwise 'would allow [a plaintiff]

to engage in lengthy and expensive discovery with respect to alleged violations of state laws

when the Court cannot be certain that any individual suffered an injury under those laws.'" *Id.* at

50 (quoting *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at \*9 (D. Colo. July 14, 2011)).  Here,

Chen has alleged no facts suggesting that she suffered any injury under the laws of a state other

than New York, or even that she has any connection with a state other than New York.

Accordingly, Count VIII should be dismissed for lack of standing.[19]

---

[19]   To the extent Count VIII alleges a violation of GBL sections 349 and 350, *see* SAC
¶ 193(gg), it is duplicative of Counts I and II.

## CONCLUSION

The claims of plaintiffs Evanson, Johnson, Buscholtz, and Beattie should be dismissed without prejudice for lack of personal jurisdiction pursuant to Rule 12(b)(2).  The claims of plaintiff Chen should be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6).  Alternatively, plaintiff Chen's request for injunctive relief and Count VIII of the complaint should be dismissed for lack of Article III standing pursuant to Rule 12(b)(1).

Dated:  January 11, 2018                    Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:     _/s/ Kyle D. Gooch_____
       Kyle D. Gooch
       250 West 55th Street
       New York, NY 10019-9710
       T:  +1 212.836.8000
       F:  +1 212.836.8689
       kyle.gooch@apks.com

       Sean Morris
       777 South Figueroa Street, 44th Floor
       Los Angeles, CA 90017-5844
       T:  +1 213.243.4000
       F:  +1 213.243.4199
       sean.morris@apks.com

       *Attorneys for Defendant*
       *Dunkin' Brands, Inc.*