**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------- x

CHUFEN CHEN,
ELIE EVANSON,
SHERRY L JOHNSON,
DAVID A BUCHOLTZ, and
MICHELLE BEATTIE,
*on behalf of themselves and others similarly situated*

                                       Plaintiffs,          **Case No: 17-cv-03808**

                   v.

DUNKIN' BRANDS, INC (a Delaware Corporation)
      d/b/a Dunkin' Donuts;
                              Defendant.

-------------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DUNKIN' BRANDS,**
**INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT**

John Troy
Troy Law, PLLC
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
(718) 762-1324
johntroy@troypllc.com
*Attorney for Plaintiffs*

## CONTENTS

ARGUMENT ..................................................................................................................... 1

  I.  THE COURT HAS PERSONAL JURISDICTION OVER DUNKIN' ..................................... 1

     a.  Dunkin' is Subject to General Jurisdiction in New York ................................. 1

     b.  The Court has Specific Jurisdiction over Dunkin' with Respect to the Claims of the Nonresident Plaintiffs ......................................................................................... 3

  II.  PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ....................... 4

     a.  The Products' Names Would be Deceptive to a Reasonable Consumer .............. 4

     b.  Plaintiffs Adequately Allege a Legally Cognizable Injury ................................. 6

     c.  Plaintiffs Adequately State a Claim under the Magnuson-Moss Warranty Act ...... 7

  III.  PLAINTIFFS DO NOT LACK STANDING TO DEMAND INJUNCTIVE RELIEF OR TO ASSERT CLAIMS UNDER THE LAWS OF ALL 50 STATES AND THE DISTRICT OF COLUMBIA .... 7

     a.  Plaintiffs Do Not Lack Standing to Pursue Injunctive Relief against Dunkin' .... 7

     b.  Plaintiffs Do Not Lack Standing to Assert Claims under the Laws of All 50 States and the District of Columbia ................................................................................. 8

  CONCLUSION ............................................................................................................... 10

## Cases

*Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156 (N.Y.E.D. 2010) ........................ 8, 9

*Augsbury Corp. v. Petrokey Corp.*, 97 A.D. 2d 173 (3d Dep't 1983) ........................................... 5

*Bagdon v. Philadelphia & Reading Coal & Iron Co.*, 217 N.Y. 432 (1916) ............................... 5

*Bartolini v. Ashcroft*, 226 F. Supp. 2d 350 (D. Conn. 2002) ...................................................... 11

*Batista v. United States INS*, 2000 U.S. Dist. LEXIS 1647, No. 99 Civ. 2847 (S.D.N.Y. Feb. 22, 2000) ......................................................................................................................................... 11

*Belfiore v. P&G*, 94 F. Supp. 3d 440 (N.Y.E.D. 2015) ............................................................... 9

*Bell v. Hood*, 327 U.S. 678 (1946)......................................................................................... 11, 12

*Bowling v. Johnson & Johnson*, 665 F. Supp. 3d 371 (S.D.N.Y. 2014)...................................... 10

*Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ....................................... 7

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2016)........................................................... 4, 5

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................................................... 6

*Carlson v. Principal Fin. Group*, 320 F.3d 301 (2d Cir. 2003)................................................. 12

*Commonwealth Land Title Ins. Co. v. United States*, 759 F. Supp. 87 (D. Conn. 1991) ............ 11

*Dae Hyun Kim v. Ashcroft*, 340 F. Supp. 2d 384 (S.D.N.Y., 2004) ........................................... 11

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) .......................................................................... 4

*Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256 (11th Cir. 1997) .............. 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 2846 (2011)................................................ 4

*Heckert v. 2495 McCall Rd. Corp.*, 2008 U.S. Dist. LEXIS 12981 (M. D. Fla. Feb. 21, 2008) . 11, 12

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ........ 10

*Morrison v. Amway, Corp.*, 323 F.3d 920 (11th Cir. 2003).......................................................... 12

*New York Dist. Attorney Investigators Police Benevolent Ass'n v. Richards*, 711 F.2d 8 (2d Cir. 1983) ......................................................................................................................................... 11

*Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974) ............................................. 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................ 6, 7

*Simanonok v. Simanonok*, 787 F.2d 1517 (11th Cir. 1986) ........................................................ 11

*Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999) ................................................................ 9

*Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010)........................ 12

*Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880 (N.Y.E.D. 2015) .. 9

*Taylor v. Vt. Dep't of Educ.*, 2001 U.S. Dist. LEXIS 24933 (D. Vt. Apr. 4, 2001) .................... 11

## Statutes

28 U.S.C. § 1331....................................................................................................................... 11

Conn. Gen. Stat. § 33-920........................................................................................................... 5

Conn. Gen. Stat. § 33-926........................................................................................................... 5

NY CLS Bus Corp § 1301 ........................................................................................................... 5

Plaintiffs Chufen Chen ("Chen"), Elie Evanson ("Evanson"), Sherry L Johnson ("Johnson"), David A Bucholtz ("Bucholtz"), and Michelle Beattie ("Beattie") respectfully submit this memorandum of law in opposition to defendant Dunkin' Brands, Inc.'s ("Dunkin") motion to dismiss plaintiffs' Second Amended Complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

## I.   THE COURT HAS PERSONAL JURISDICTION OVER DUNKIN'

### a.   Dunkin' is Subject to General Jurisdiction in New York

A corporation may be subject to general jurisdiction in a state when "that corporation's affiliations with the State are so 'continuous and systemic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 2846, 2851 (2011)). While the "paradigm" cases for general jurisdiction include "the place of incorporation and principle place of business," "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principle place of business." *Daimler*, 134 S. Ct. 746, at 760 (2014). Both the Supreme Court and the Second Circuit have recognized that "exceptional" circumstances can render a corporation at home in a forum state. *See Daimler*, 134 S. Ct. 746, n.19 (2014), *Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2016).

Here, contrary to defendant's assertions, we find just such an exceptional circumstance in defendant's registration to do business in New York and its consent to general jurisdiction by New York courts. The Second Circuit analyzed this basis for general jurisdiction in the context of Connecticut's requirement that a foreign corporation desiring to transact business in that state obtain a certificate of authority from the Connecitcut Secretary of State and continuously maintain a registered office and registered agent in Connecticut. *Brown*, 814 F.3d 619, at 633

1

(citing Conn. Gen. Stat. § 33-920, 926) (citations omitted). Importantly, at the time of *Brown*, "the Connecticut Supreme Court [had] yet to give a definitive interpretation of the jurisdictional import of Connecticut's registration and agent-appointment statutes." *Id.* at 634. New York's General Business Law § 1301, however, is both more demanding than the Connecticut statute and has been over 60 years interpreted by the New York and Federal courts to allow for the exercise of general jurisdiction over foreign registered corporations. *See* NY CLS Bus Corp § 1301.

The *Brown* Court itself recognized that "the registration statute in the state of New York has been definitively construed to accomplish that end [of vesting New York courts with general jurisdiction over corporations that register with and transact business in the state]." *Brown*, 814 F.3d 619, at 640 (2016). *See e.g.*, *Augsbury Corp. v. Petrokey Corp.*, 97 A.D. 2d 173, 175 (3d Dep't 1983) ("A voluntary use of state procedures… is in fact a form of constructive consent to personal jurisdiction which has been found to satisfy due process…."); *Bagdon v. Philadelphia & Reading Coal & Iron Co.*, 217 N.Y. 432, 436–37 (1916) (concluding that designation of a New York agent by a foreign corporation was a general consent to jurisdiction); *see also Burger King Corp. v. Rudewicz*, 471 U.S. 462, n.14 (1985) ("We have noted that, because the personal jurisdiction requirement is a waivable right, there are a "variety of legal instruments" by which a litigant may give "express or implied consent to the personal jurisdiction of the court.") (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). And while the *Brown* court likewise recognized that "were the Connecticut statute drafted such that it could be fairly construed as requiring foreign corporations to consent to general jurisdiction" the way the New York statute has been, it might be confronted with Constitutional questions, the Second Circuit expressly did not address those questions. *Id.*

b.   **The Court has Specific Jurisdiction over Dunkin' with Respect to the Claims of the Nonresident Plaintiffs**

Plaintiffs' complaint alleges, among other things, that "although Dunkin' Donuts points of distribution and retail stores are owned and/or operated by franchisees," Defendant "creates, maintains, and enforces strict uniform standards and practices for all aspects of its Dunkin' Donut distribution sites, including its food offerings and prices." Am. Cplt. ¶ 19. More specifically, the complaint alleges that Defendant obtains a "franchising fee," "designates suppliers with whom franchisees must obtain their supplies," requires that franchisees sell "required products, and only approved products," and enforces this policy by having consultants "regularly check" up on franchisees' operations. *Id*, ¶¶ 53, 55, and 57.

It is well-settled that a franchisee contracting this sort of agreement with an out-of-state franchisor establishes "minimum contacts" sufficient for the foreign state to exercise specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–79 (1985). *Burger King's* reasoning is not, however, limited to the franchisees in a franchise relationship. Rather, its language is expansive: "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.*, at 476 (citations omitted).

Defendant argues that a New York court cannot exercise specific jurisdiction over the claims of nonresident plaintiffs. This argument seems to be made on behalf of and in the interest of the nonresident plaintiffs, and it is far from clear that Defendant even has standing to make it. The ordinary rule is that a party may assert only his own rights, and not the rights of his adversary. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804–805 (1985). Phillips Petroleum was only permitted to assert that out-of-state class plaintiffs be excluded in order to protect itself from

3

numerous individual lawsuits that would follow a class judgment without *res judicata* effect in other states. *Id*., at 805. But the Court held that such a class judgment would have exactly that effect. "The authority of a State to entertain the claims of nonresident class members is entirely different from its authority to exercise jurisdiction over an out of state defendant." *Bristol-Meyers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1783 (2017). Named class plaintiffs outside New York allege violations of their states' consumer protection statutes arising out of Defendant's conduct which was national in scope, on behalf of state sub-classes of a national class. It is entirely appropriate to litigate this action in a single forum the decisions of which will have national *res judicata* effect, rather than break up the action, arising out of a unified course of conduct, into numerous actions.

## II.    PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### a.    The Products' Names Would be Deceptive to a Reasonable Consumer

#### 1.    It is Deceptive for Dunkin' to Use the term "Steak" to Describe a Ground Meat Product

Any reasonable consumer would understand "steak" to mean an intact cut of meat. All the dictionary definitions cited by defendant not only make it clear that the common understanding of "steak" is as a thick, intact slice or cut of meat, but that any understanding of "steak" to include a ground meat product is secondary at best. While Merriam-Webster's cited definition is the fourth listed definition out of four, and is labeled "2." The other three definitions are grouped together as 1a, 1b, and 1c: "a slice of meat cut from a fleshy part of a beef carcass," "a similar slice of a specified meat other than beef[ e.g.] ham steak]," and "a cross-section slice of a large fish[ e.g.] swordfish steak." https://www.merriam-webster.com/dictionary/steak. The American Heritage Dictionary's definition of steak as "3. a patty of ground meat" is third, after "1. A slice of meat, typically beef, usually cut thick and across the muscle grain" and "2. A thick slice of large fish cut across the body." https://ahdictionary.com/word/search.html?q=steak. Finally, Webster's New World College Dictionary places its "ground beef formed into a patty"

4

second, after "1. A slice of meat, esp. beef, or of a large fish, cut thick."

http://www.yourdictionary.com/steak. The Oxford English Dictionary's much more extensive

definition does not include a reference to "ground" meat at all.

http://www.oed.com/view/Entry/189457?redirectedFrom=steak#eid. Defendant's reference to

"Hamburg steak" or "Salisbury steak" is wholly inapposite, because those terms refer

specifically to ground meat products and indeed specific methods of cooking or recipes. No one

could possibly confuse a one of these foodstuffs with a steak sandwich. The USDA, which has

established specific standards for "Salisbury Steak," certainly has not. *See*, USDA Food

Standards and Labeling Policy Book, 202 (2005)

(https://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf).

      Defendants' video advertisements obscure the products' beef patties with actors' hands,

sandwich breads, and text. The patties themselves are visible for bare moments in minute[s]-long

commercials, and any screenshots are not representative of the impression a reasonable

consumer will get from the advertisements. Any visual cues as to the patties' true contents would

also not be available to consumers listening to the television or to their computer but looking

elsewhere (for example, having tabbed away from an ad playing in their browser), or listening on

the radio. Contrary to Defendant's assertions, the product is not visible to the consumer in the

store before purchase.

      The advertisements should not be considered in conjunction with Defendant's ingredients

statement, but on their own. Defendant's ingredient statement is available—to an extremely

conscientious consumer who is determined to seek it out. This is not a standard to hold a

reasonable consumer. *See Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156, at *16

(ingredient list, though relevant, does not as a matter of law extinguish the possibility that

5

reasonable consumers could be misled by vitaminwater's labeling and marketing."). Furthermore, the issue is whether Defendant's advertising campaign would mislead a reasonable consumer, and Defendant's ingredient statement is not part of its advertising campaign.

### 2.    The USDA Regulations

Defendant's product is not simply "ground beef," but includes binders such as yeast, protein, milk, and wheat gluten, as well as added water and fat, in such quantities as to render it unsuitable for labeling as "steak." In the context of this lawsuit, this goes to show that 1) Defendant knew that it was engaging in deception when it called its products "steak." *See* Am. Cplt. ¶ 51 (contrasting the labeling requirements with Dunkin's consumer-directed conduct).

### b.    Plaintiffs Adequately Allege a Legally Cognizable Injury

Defendant's reliance on *Small* to argue that Plaintiffs sustained no cognizable injury is inapposite. Plaintiffs in that case failed to argue "that the cost of cigarettes was affected by the alleged misrepresentation." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999). By contrast, in this case, Plaintiffs argue that Defendant's misrepresentations as to the quality of its Angus products allowed them to charge a premium for those Angus products over and above the cost of similar products—sandwiches containing meat (including sausage patties which are marketed as sausage and not steak), eggs, and cheeses—that it also sold.

Courts in New York routinely recognize injuries under § 349 based on an excess price theory. *See*, *e.g.*, *Belfiore v. P&G*, 94 F. Supp. 3d 440, 447 (N.Y.E.D. 2015) ("premium price paid based on misrepresentations is injury under [] section 349"), *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 U.S. Dist. LEXIS 126880, at *68 (N.Y.E.D. 2015) ("The injury prong of a GBL section 349 claim is satisfied 'by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.'") (quoting *Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156, at *23 (N.Y.E.D. 2010), collecting cases).

6

Plaintiffs have pled that they paid specific amounts for the Angus products, and have alleged that these products were more expensive than similar Dunkin' products and similar competitors' products. *See, e.g.*, 2d Am. Cplt. ¶¶ 104–107, 109–110, 113–115, 118, and 122–123. Plaintiffs clearly allege that Dunkin' Brands is responsible for setting minimum prices that franchisees must not go below. 2d Am. Cplt. ¶ 21, and allege that the various franchises charged similar amounts. *See, e.g.*, 2d Am. Cplt. ¶¶ 104, 106, 109, 113, 118, and 122.

### c.    Plaintiffs Adequately State a Claim under the Magnuson-Moss Warranty Act

Defendant's description of its product as "Angus steak," which was written, among other places, in print advertisements, online advertisements, and menus, denotes that its product is made of beef from Angus breed cattle. If Defendant's product included beef from other breeds of cattle, it would not be free from defect.

Neither *Bowling* nor *Frtio Lay* concerned such a specific claim as that advanced by Defendant here. *See*, *Bowling v. Johnson & Johnson*, 665 F. Supp. 3d 371 (S.D.N.Y. 2014), *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013). *Bowling* concerned a claim as to how a product worked and did not concern ingredients, while *Frito Lay* concerned an extremely vague statement that the product was "All Natural, not that it contained specific ingredients. *Id.*

### III.    PLAINTIFFS DO NOT LACK STANDING TO DEMAND INJUNCTIVE RELIEF OR TO ASSERT CLAIMS UNDER THE LAWS OF ALL 50 STATES AND THE DISTRICT OF COLUMBIA

### a.    Plaintiffs Do Not Lack Standing to Pursue Injunctive Relief against Dunkin'

Plaintiffs continue to be subject to Defendant's deceptive advertising campaign and have alleged facts sufficient to demonstrate that they might suffer harm if it continues. Plaintiff Chen, for instance, purchased multiple Angus Steak products. 2d Am. Cplt. ¶¶ 104, 106. Plaintiff Beattie "preferred to pay a premium" for the product "to celebrate the upcoming weekend each

week" even though she knew she was paying a premium. 1st Am. Cplt. ¶ 131. Plaintiff Johnson purchased Angus Steak products not just for herself, but for others (2d Am. Cplt. ¶¶ 112 alleges that she purchased 3 Angus Steak products at a time)—she may be required to purchase Angus Steak items for others in the future, even if she tells them about the deceptiveness of Defendant's advertising campaign.

### b.   Plaintiffs Do Not Lack Standing to Assert Claims under the Laws of All 50 States and the District of Columbia

United States District Courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists where "(1) the claim turns on an interpretation of the laws of Constitution of the United States and (2) the claim is not 'patently without merit.'" *Dae Hyun Kim v. Ashcroft*, 340 F. Supp. 2d 384, 388 (S.D.N.Y., 2004) (quoting *Batista v. United States INS*, 2000 U.S. Dist. LEXIS 1647, No. 99 Civ. 2847, at *3 (S.D.N.Y. Feb. 22, 2000) (itself quoting *Bell v. Hood*, 327 U.S. 678, 683–85 (1946))). A claim is only patently without merit "when the right claimed is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy …." *Id.* at 391 (quoting *Bartolini v. Ashcroft*, 226 F. Supp. 2d 350, 354 (D. Conn. 2002) (itself quoting *New York Dist. Attorney Investigators Police Benevolent Ass'n v. Richards*, 711 F.2d 8, 10 (2d Cir. 1983)), internal quotation marks omitted). Courts have recognized that "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Heckert v. 2495 McCall Rd. Corp.*, 2008 U.S. Dist. LEXIS 12981, at *9 (M. D. Fla. Feb. 21, 2008) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997) (itself citing *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir. 1986))); *see also Commonwealth Land Title Ins. Co. v. United States*, 759 F. Supp. 87, 90 (D. Conn. 1991) ("the burden of establishing federal jurisdiction is not particularly onerous") and *Taylor v. Vt. Dep't of Educ.*, 2001 U.S. Dist. LEXIS 24933, at *27 (D. Vt. Apr. 4, 2001) ("the threshold to withstand a

motion to dismiss under Rule 12(b)(1) is extremely low").

Jurisdictional inquiry under Article III and § 1331 "'depends entirely upon the allegations in the complaint' and asks whether the claim as stated in the complaint 'arises under the Constitution or law of the United States.'" *Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (quoting *Carlson v. Principal Fin. Group*, 320 F.3d 301, 306 (2d Cir. 2003)). Courts train an "exclusive focus" on the complaint in determining federal question jurisdiction, holding that "whether a plaintiff has pled a jurisdiction-conferring claim is a wholly separate issue from whether the complaint adequately states a legally cognizable claim for relief on the merits." *Id.* A well-pleaded claim under a federal law will always grant jurisdiction "unless the purported federal claim is clearly 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Id.* (quoting *Carlson*, 320 F.3d at 306 (itself quoting *Bell*, 327 U.S. at 682–83)).

The onus is on the movant for dismissal to demonstrate "that the assertion of subject matter jurisdiction is 'so insubstantial, implausible, foreclosed by prior decisions of the [United States Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy'" *Heckert* at *9 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). While a movant may fairly rely on "extrinsic evidence such as testimony or affidavits" to persuade the Court, *Id.* at *10 (quoting *Morrison v. Amway, Corp.*, 323 F.3d 920, 924 (11th Cir. 2003), "a district court should only rely on its Rule 12(b)(1) authority to weigh and determine contested facts if the facts necessary to establish jurisdiction do not implicate the merits of the plaintiff's claim." *Id.* at *11, citing *Morrison*, 323 F.3d at 925.

Here, Plaintiffs have pled sufficient facts to show that Defendant engaged in a course of deceptive conduct with national scope, including a common minimum price threshold that nevertheless represented a premium price, and a national advertising campaign.

## CONCLUSION

For the foregoing reasons, we ask that the Defendant's Motion to Dismiss be denied.

Dated: January 25, 2018
Flushing, NY

Respectfully submitted,


 /s/ John Troy_____
John Troy
TROY LAW, PLLC
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Fax: (718) 762-1342
johntroy@troypllc.com
*Attorney for Plaintiffs*

10

## Certificate of Service

The undersigned does hereby certify that a true and correct copy of the foregoing memorandum of law in opposition to Defendant Dunkin' Brands, Inc.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint was mailed to Defendant's attorneys, Arnold & Porter Kay Scholer LLP, 250 W 55th Street, New York, NY 10019 on January 25, 2018 and emailed to same at the email addresses kyle.gooch@apks.com and sean.morris@apks.com on February 1, 2018.

 /s/ John Troy
John Troy
TROY LAW, PLLC
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Fax: (718) 762-1342
johntroy@troypllc.com
*Attorney for Plaintiffs*