UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHUFEN CHEN, ELI EVANSON,
SHERRY L JOHNSON, DAVID A
BUCHOLTZ, and MICHELLE BEATTIE,

                Plaintiffs,

    -against-

DUNKIN' BRANDS, INC. (a Delaware
Corporation), d/b/a Dunkin' Donuts,

                Defendant.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
17-CV-3808 (CBA) (RER)

**AMON, United States District Judge:**

Plaintiffs Chufen Chen of New York, Michelle Beattie of California, David A Bucholtz of Michigan, Eli Evanson of Massachusetts, and Sherry L Johnson (with Beattie, Bucholtz, and Evanson, the "non-resident Plaintiffs") of Florida bring the instant nationwide class action against Defendant Dunkin' Brands, Inc., asserting deceptive practices and false advertising claims under the Magnuson-Moss Warranty Act (the "Magnuson-Moss Act"), 15 U.S.C. § 2301 et seq.; the California Unfair Competition Law, Cal. Civ. Code § 17200 et seq.; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201; the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 1 et seq.; the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 et seq.; the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349–50; and the consumer protection laws of the 45 other states and the District of Columbia. (D.E. # 14 ("SAC").)

In their Second Amended Complaint, Plaintiffs allege that Defendant disseminated numerous TV commercials claiming that two of its food products—a sandwich and a wrap—contained "Angus steak"; that Plaintiffs paid a premium to buy the products in reliance on those advertisements; that the reasonable consumer would consider "Angus steak" to be an intact piece

of Angus cattle meat, not a ground beef patty without Angus beef; and that the food products sold included the latter meat patty. (See generally id.) Plaintiffs bring this class action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), on behalf of "millions of consumers throughout the nation." (Id. ¶¶ 12, 129.)

Before the Court is Defendant's motion to dismiss the Second Amended Complaint for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure, lack of personal jurisdiction under Rule 12(b)(2), and failure to state a claim under Rule 12(b)(6). For the reasons stated below, the Court grants Defendant's motion.

## BACKGROUND[1]

Plaintiffs allege that Defendant is a Delaware corporation, (id. ¶ 19); they do not plead Defendant's principal place of business. Defendant grants licenses to franchisees to operate stores that sell, among other things, food products called the "Angus Steak & Egg Breakfast Sandwich" (the "Angus steak sandwich") and the "Angus Steak & Egg Wake-Up Wrap" (the "Angus steak wrap"). (Id. ¶¶ 1, 51, 58.) Plaintiffs propose two theories of deception: (1) that Defendants' "Angus Steak" products are ground meat rather than an intact, single piece of meat and (2) that the patty contains additives, preservatives, fillers, and other ingredients. (Id. ¶ 2; see also id. ¶¶ 26, 52.) Plaintiffs focused on three television commercials aired to market the products: "Fellow-Steak-Lover Handshake," "Angus Steak & Egg Sandwich," and "Angus Steak Big N' Toasted."

---

[1] For purposes of a Rule 12(b)(2) motion, the Court must construe all pleadings and affidavits "in the light most favorable to plaintiff and resolv[e] all doubts in plaintiff's favor." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010). However, the Court "will not draw 'argumentative inferences' in plaintiff's favor," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1997), and will not "accept as true a legal conclusion couched as a factual allegation," Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998).

As for a Rule 12(b)(6) motion, the Court draws facts from the Complaint, documents incorporated by reference, and "matters subject to judicial notice" under Rule 201 of the Federal Rules of Evidence. N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y., 850 F.3d 79, 86 (2d Cir. 2017); see also Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). The Court "draw[s] all reasonable inferences in plaintiff's favor." Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010).

(SAC ¶¶ 61–102.) In the Second Amended Complaint, Plaintiffs included online links to the commercials, which feature actors repeatedly saying the word "steak" and on-screen text including the words "Angus" and "steak." (See id.) The actors were also holding the products. Each segment included blow-up images of the food products and their respective meat patties.

Plaintiffs each claim to have purchased the products in their respective states after viewing the deceptive advertising. For instance, Chen pleaded that she "was repeatedly exposed to and saw Defendant's advertisements and representations regarding" the products. (Id. ¶ 103.) She stated that on or about June 21, 2017, she purchased an Angus steak sandwich on a bagel for $3.99 at one of Defendant's franchise stores in Flushing. (Id. ¶ 104.) She stated that the price included a 50-cent "premium" over a comparable "Classic Egg and Cheese Bagel (with Ham, Bacon[,] or Sausage)." (Id. ¶ 105.) On or about June 24, 2017, Chen also purchased an Angus steak wrap for $1.99 at the same Flushing store. She stated that the price included a 60-cent "premium" over the comparable "Classic Egg and Cheese wrap (with Ham, Bacon[,] or Sausage)." (Id. ¶ 107.)

On June 25, 2017, Chen filed the initial Complaint, asserting class claims. Chen filed a First Amended Complaint as a matter of right on September 18, 2017, including Beattie, Bucholtz, Evanson, and Johnson as co-plaintiffs. (D.E. # 6); see also Fed. R. Civ. P. 15(a)(1)(A). The co-plaintiffs do not reside in New York, and the pleadings do not suggest any connection between New York and their claims. On November 30, 2017, the Court held a pre-motion conference to discuss Defendant's intended motion to dismiss; at the proceeding, Plaintiffs expressed interest in filing a Second Amended Complaint, which the Court allowed. (See D.E. dated Dec. 6, 2017.) Plaintiffs filed the new pleadings on December 11, 2017, (see SAC), and Defendant filed its motion to dismiss the Second Amended Complaint on February 8, 2018, (D.E. # 17).

With its briefing,[2] Defendant provided an ingredient list for the disputed food products. (See D.E. # 18-2.) The list is publicly available on Defendant's website. Although the list is not appended to the pleadings, the Court may consider it because it is integral to the Second Amended Complaint. See, e.g., Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); (see also SAC ¶¶ 48–50 (relying on the ingredient list)).[3] The list includes ingredients for the meat patties in both food products, and the first ingredient is "Angus Beef." (D.E. # 18-2 at 5.) At oral argument, Plaintiffs conceded that the food products contained angus beef.

## STANDARDS OF REVIEW

"[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)). If, as here, the case has not proceeded through discovery and the Court declines to hold an evidentiary hearing on personal jurisdiction, Plaintiffs "need make only a prima facie showing that jurisdiction exists." Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985). Plaintiffs may satisfy their burden "notwithstanding a controverting presentation by the moving party," because "all pleadings and affidavits are construed in the light most favorable to [the] plaintiff[s], and where doubts exist, they are resolved in [their] favor." Id. If the defendant challenges only the sufficiency of the pleadings, the Court may decide a Rule 12(b)(2) motion considering only the Complaint.

---

[2] For purposes of the instant motion, the Court reviewed the following documents: the Second Amended Complaint; the online videos incorporated by reference to the pleadings, (see SAC ¶¶ 63 n.1, 74 n.2, 91 n.3); the ingredient list, (D.E. # 18-2); Defendant's initial brief, (D.E. # 19 ("Br.")); Plaintiffs' opposition brief, (D.E. # 22 ("Opp'n")); and Defendant's reply brief, (D.E. # 20 ("Reply")).

[3] Indeed, Plaintiffs do not dispute relying on the list for their pleadings. Moreover, they do not contest the list's authenticity or accuracy. See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).

4

Ball, 902 F.2d at 197. The Court also may consider "affidavits and supporting materials" from the parties. See Marine Midland Bank, N.A. v. Miller, 664 F.2d 889, 904 (2d Cir. 1981).

To survive a Rule 12(b)(6) motion, Plaintiff must allege "sufficient factual matter" to "nudge[]" its claims "across the line from the conceivable to plausible." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2008)). Drawing upon "experience and common sense," the Court must determine whether liability is a "reasonable inference" from the allegations. Id. at 678–79. The Court must dismiss the Complaint if its "well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct . . . ." Id. at 679. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678.

The Court applies the "familiar Rule 12(b)(6) standard" when assessing a Rule 12(b)(1) motion to dismiss for lack of standing. Donoghue v. Bulldog Inv'rs Gen. P'ship, 696 F.3d 170, 173 (2d Cir. 2012). Because Defendant raises a "facial" challenge to standing, the Court relies on the pleadings to determine whether the allegations "affirmatively and plausibly suggest that [Plaintiffs] had standing to sue." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016).

## DISCUSSION

Defendant challenges Plaintiffs' standing to assert certain claims, the Court's personal jurisdiction over it, and the merits of the deceptive practices and false advertising claims. The Court deals with each challenge in turn.

### I.  Standing

Defendant challenges Plaintiffs' standing to pursue injunctive relief and claims under the consumer fraud statutes of all 50 states and the District of Columbia. (Br. at 23–26.) Defendant's position has merit with respect to the injunctive relief but not as to the state-law claims.

With respect to injunctive relief, Plaintiffs allege only past harm and provide no indication of "a continuing violation or the imminence of a future violation." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 108 (1998). No Plaintiff continues to be deceived by Defendant's practices. And no Plaintiff has alleged an intent to purchase the products in the future. Plaintiffs do not seriously dispute this gap in their pleadings. (See Opp'n at 7–8). Such holes are fatal to their claim for injunctive relief. See also, e.g., Albert v. Blue Diamond Growers, 151 F. Supp. 3d 412, 418 (S.D.N.Y. 2015); Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014).[4] "Nothing supports the requested injunctive relief except [Plaintiffs'] generalized interest in deterrence, which is insufficient for purposes of Article III." Steel, 523 U.S. at 108; see also O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974); Nicosia v. Amazon.com, Inc, 834 F.3d 220, 239 (2d Cir. 2016). Because Plaintiffs fail to show individual standing to pursue injunctive relief, they fail to plausibly allege class standing. See Ret. Bd. of the Policeman's Annuity & Benefit Fund v. Bank of N.Y. Mellon, 775 F.3d 154, 161 (2d Cir. 2014). The Court accordingly dismisses Plaintiffs' claim for injunctive relief for lack of standing. See, e.g., Davis v. Hain Celestial Grp., Inc., No. 17-CV-5191 (ARR), 2018 WL 1611375, at *8 (E.D.N.Y. Apr. 3, 2018).

As for the various state-law consumer-protection claims, Defendant argues that Plaintiffs lack standing unless they "reside[] in, do[] business in, or ha[ve] some other connection to that state." (Br. at 26 (quoting In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig., 1 F. Supp. 3d 34, 49 (E.D.N.Y.), amended in part on other grounds, 14 F. Supp. 3d 99 (E.D.N.Y. 2014)).) Defendant's argument confuses constitutional standing with the class-action

---

[4] Defendant notes a line of district court cases that have, on public policy grounds, found Article III standing to bring consumer protection claims in absence of a continuing violation. (Br. at 25 n.18.); see, e.g., Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015). "However, the weight of authority in this Circuit directs a different outcome." Kommer v. Bayer Consumer Health, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017). The Court agrees that the "weight of authority" is more faithful to the Supreme Court's precedent—Steel in particular—and declines to follow the Belfiore line of cases.

requirements under Rule 23 of the Federal Rules of Civil Procedure. See Langan v. Johnson & Johnson Consumer Cos., Inc., 897 F.3d 88, 93 (2d Cir. 2018) ("[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of adjudicatory competence under Article III.") (internal citations omitted). Defendant does not dispute that Plaintiffs have standing to assert claims under their own state laws. (See Br. at 23–26.) Plaintiffs plausibly allege "(1) that [they] personally ha[ve] suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." Ret. Bd. Of Policeman's Annuity & Benefit Fund, 775 F.3d at 161. That is sufficient to assert class standing and defeat Defendant's 12(b)(1) motion.

## II.     Personal Jurisdiction

Defendant challenges whether the exercise of personal jurisdiction over it comports with constitutional due process. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012). Importantly, Defendant does not argue that the Court lacks specific personal jurisdiction over it with regard to Chen's claims. Its challenges are limited to the Court's exercise of personal jurisdiction over it with regard to the non-resident Plaintiffs' claims.

Neither CAFA nor the Magnuson-Moss Act permits nationwide service of process. Therefore, New York's long-arm statute provides the statutory basis of personal jurisdiction in this case. See Fed. R. Civ. P. 4(k)(1). The Second Circuit has long held that when a plaintiff's "assertion of personal jurisdiction rests upon a state long-arm statute, the relevant constitutional constraints are those imposed by the Due Process Clause of the Fourteenth Amendment," not of

the Fifth Amendment, Licci, 673 F.3d at 60; see also Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 171–73 (2d Cir. 2010)); Savin v. Ranier, 898 F.2d 304, 307 (2d Cir. 1990). Under the Fourteenth Amendment, the constitutional analysis "consists of two separate components: [1] the 'minimum contacts' inquiry and [2] the 'reasonableness' inquiry." Id. (quoting Chloé, 616 F.3d at 164). Because Plaintiffs fail to establish minimum contacts over Defendant with respect to the non-resident Plaintiffs' claims, the Court discusses only the first prong of the Fourteenth Amendment analysis.

"The 'minimum contacts' inquiry requires us to consider 'whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.'" Licci, 673 F.3d at 60 (quoting Chloé, 616 F.3d at 164). Unlike a Fifth Amendment analysis, which considers the United States as the forum, a Fourteenth Amendment inquiry focuses on the state in which the Court resides. See Chew, 143 F.3d at 28 n.4. "For purposes of this inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." Chloé, 616 F.3d at 164. The Court addresses each in turn.

    **1.    General Personal Jurisdiction**

"General jurisdiction . . . permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." Brown v. Lockheed Martin Corp., 814 F.3d 619, 624 (2d Cir. 2016). In 2014, the Court announced that the general jurisdiction inquiry asks "whether [a] corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum." Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014). In general, a defendant is "essentially at home . . . where it is incorporated or where it has its principal place of business." Id. In this case, neither state is New York. (See SAC ¶ 19.) However, in a "truly 'exceptional' case," another forum state may exercise general jurisdiction.

Brown, 814 F.3d at 627. Plaintiffs argue for such an "exceptional" circumstance by pointing to New York's business registration statute, § 1301 of the New York Business Corporation Law, which has been "definitively construed" by the New York state courts to "vest the local courts with general jurisdiction over the corporation," see id. at 640.

Plaintiffs fail to persuade the Court. The state courts had established their interpretation of § 1301 before the Supreme Court decided Daimler AG. Since then, the "substantial majority" of district courts in this Circuit have found that § 1301's grant of general jurisdiction does not comport with the Fourteenth Amendment's due process clause. See, e.g., Spratley v. FCA US LLC, No. 3:17-CV-62 (MAD), 2017 WL 4023348, at *4 (N.D.N.Y. Sept. 12, 2017) (collecting cases). The Court agrees with the weight of district-court authority and finds that the registration statute does not constitute an exceptional circumstance that vests the Court with general jurisdiction. Accordingly, the Court must turn to specific jurisdiction.

### 2. Specific Personal Jurisdiction

The Court also finds that it does not have specific personal jurisdiction over Defendant with respect to the non-resident Plaintiffs' claims. "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" Chloé, 616 F.3d at 164 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)). The inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" Keeton v. Hustler Mag., Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). The Court "must evaluate the quality and nature of the defendants' contacts with the forum state under a totality of the circumstances test." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007). The "defendant's suit-related conduct must create a substantial connection with" the forum. Walden v. Fiore, 134 S. Ct. 1115,

1121 (2014). In other words, Plaintiffs must show that Defendant, through suit-related contacts with the forum, "purposefully availed" itself of the forum and "could foresee being 'haled into court' there." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 242 (2d Cir. 1999) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). This requires showing "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

The parties agree that this Court has specific jurisdiction over Defendant with regard to Chen's claims. But Defendant argues that a recent Supreme Court case restricts the Court's personal jurisdiction over it with respect to the non-resident Plaintiffs' claims. Bristol-Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773 (2017), held that a state court in a mass tort action could not assert specific personal jurisdiction over a non-resident defendant for claims by non-resident plaintiffs when jurisdiction was based solely on the defendant's in-state contacts with other, resident plaintiffs. See id. at 1781–82. Defendant argues that this principle of mass tort personal jurisdiction applies equally to the named plaintiffs of a putative class action. Specifically, Defendant argues that "absent general jurisdiction, each plaintiff must establish . . . that his or her claims arise out of or relate to Dunkin's contacts with the State of New York" rather than relying on the contacts giving rise to specific jurisdiction with regard to Chen's claims. (Br. at 8.)

The Court agrees. Under the reasoning of Bristol-Myers, each named plaintiff in a purported class action must show that in-state contacts specific to their claim give rise to specific jurisdiction over an out-of-state defendant.[5] See Bristol-Myers, 137 S. Ct. at 1773–74. This

---

[5] This is a separate question from whether a court must find specific personal jurisdiction over defendants based on the in-state contacts specific to the claims of unnamed class members. Courts have divided on whether Bristol-Myers extends to unnamed plaintiffs in class actions. Compare e.g., DeBernardis v. NBTY, Inc., No. 17-CV-6125 (HDL), 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (extending Bristol-Myers), with Fitzhenry-Russell v. Dr.

reading of Bristol-Myers comports with the weight of district court authority on the subject. See, e.g., Molock v. Whole Foods Market, Inc., 297 F. Supp. 3d 114, 124–26 (D.D.C. 2018); Greene v. Mizuho Bank, Ltd., 289 F. Supp. 3d 870, 873–75 (N.D. Ill. 2017); Jinright v. Johnson & Johnson, Inc., 17-CV-1849 (ERW), 2017 WL 3731317, at *3–5 (E.D. Mo. Aug. 30, 2017); Spratley, 2017 WL 4023348, at *6–7. From a constitutional perspective, the Court sees no meaningful difference between the plaintiffs of a mass tort action and the named plaintiffs of a class action. Cf. Dental Supplies, 2017 WL 4217115, at *9 ("The constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class."). In both circumstances, to exercise specific personal jurisdiction, a plaintiff must show "a connection between the forum and the specific claims at issue." Bristol-Myers, 137 S. Ct. at 1781.

Here, Plaintiffs do not seriously dispute the lack of connection between New York and Defendant's claim-related contacts with the non-resident Plaintiffs. Instead, Plaintiffs raise three arguments, none of which are persuasive. First, they note that Defendant enters into franchise contracts with stores across the nation. (Opp'n at 3.) However, Plaintiffs fail to show how the non-resident Plaintiffs' claims arise from or relate to those franchise contracts, particularly those franchise contracts in New York. See Chloé, 616 F.3d at 164. And even if the contracts were claim-related, Plaintiffs have failed to show that they are substantial enough to confer specific jurisdiction. See Walden, 134 S. Ct. at 1121. Second, Plaintiffs argue that Defendant lacks standing to assert the due process rights of the non-resident Plaintiffs. (Opp'n at 3–4.) The

---

Pepper Snapple Grp., Inc., No. 17-CV-564 (NMC), 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) (refusing to extend Bristol-Myers). At least two courts have extended the holding of Bristol-Myers to named class-action plaintiffs while refusing to extend it to absent, unnamed class-action plaintiffs. Compare Haj v. Pfizer Inc., 17-C-6730 (GSF), 2018 WL 1784129, at *5–6 (N.D. Ill. Apr. 13, 2018) (Bristol-Myers applies to named plaintiffs), with Haj v. Pfizer Inc., 17-C-6730 (GSF), 2018 WL 3707561, at *1–4 (N.D. Ill. Aug. 3, 2018) (Bristol-Myers does not apply to unnamed plaintiffs); compare also Molock v. Whole Foods Market, Inc., 297 F. Supp. 3d 114, 124–26 (D.D.C. 2018), with id. at 126–27. Because this motion does not present the question whether Bristol-Myers extends to absent, unnamed class members, the Court declines to speculate on the answer.

Supreme Court expressly rejected this argument in Bristol-Myers. 137 S. Ct. at 1782–83. Third, Plaintiffs contend that "[i]t is entirely appropriate to litigate this action in a single forum[,] the decisions of which will have national res judicata effect, rather than break up the action, arising out of a uniformed course of conduct, into numerous actions." (Opp'n at 4.) But policy arguments must yield to the Constitution. See World-Wide Volkswagen, 444 U.S. at 294 ("Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.").

Accordingly, the named non-resident Plaintiffs have failed to show even one purposeful and relevant "activity" or "occurrence that t[ook] place in" New York. Bristol-Myers, 137 S. Ct. at 1778. The Court thus finds that it lacks personal jurisdiction over Defendant with respect to the named non-resident Plaintiffs' claims.

* * *

Having considered the jurisdictional challenges, the Court finds that only Chen may assert the Magnuson-Moss Act claims and state-law claims. The Court next turns to the merits.

### III. Merits

#### A. Magnuson-Moss Act Claims

Defendant argues that its use of the term "Angus steak" is a "product description," not an "actionable warranty" under the Magnuson-Moss Act. (Br. at 22–23.) The Court agrees.

The Magnuson-Moss Act authorizes certain damages lawsuits by purchasers of consumer products who are "damaged by the failure of a supplier . . . to comply with any obligation . . . under

a written warranty . . . ." 15 U.S.C. § 2310(d)(1). A "written warranty" is "any written affirmation of fact or written promise" that (1) is "made in connection with the sale," (2) "relates to the nature of the material or workmanship," (3) "affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time," and (4) "becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." Id. § 2301(6). As the relevant regulations make clear, a "product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty." 16 C.F.R. § 700.3; see also In re Scott EZ Seed Litigation, No. 12-CV-4727 (VB), 2013 WL 2303727, at *3–4 (S.D.N.Y. May 22, 2013); In re Frito-lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413 (RRM), 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013); Bowling v. Johnson & Johnson, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014).

Chen's federal claims fail in light of the statutory definition for "written warranty" and its supporting regulation. Because the disclosure at issue—"Angus beef"—does not include any specified time period, it is "at most" a "product description," not a written warranty under the Magnuson-Moss Act. In re Frito-lay N. Am., Inc. All Nat. Litig., 2013 WL 4647512, at *17; Bowling, 65 F. Supp. 3d at 378. Chen fails plausibly to allege the federal claim.[6]

**B.    State-Law Claims**

---

[6] The Magnuson-Moss Act claims fail for another reason. The statute "limits the subject matter jurisdiction of the federal courts to adjudicate such claims." Mahoney v. Endo Health Solutions, Inc., No. 15-CV-9841 (DLC), 2016 WL 3951185, at *7 (S.D.N.Y. July 20, 2016). The Court must raise jurisdictional issues sua sponte. See, e.g., Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006). The Magnuson-Moss Act provides that "[n]o claim shall be cognizable" if brought in a "district court of the United States" if: (A) "the amount in controversy of any individual claim is less than the sum or value of $25"; (B) "the amount in controversy is less than the sum or value of $50,000"; or (C) "the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(A)–(C). Here, Chen allegedly spent $5.98 on Defendant's products. (SAC ¶¶ 103–07.) Chen's individual claim does not meet the statute's $25 jurisdictional requirement, and her purported class action has less than one-hundred named plaintiffs. Because Chen's class action does not meet the Magnuson-Moss Act's jurisdictional requirement, it must be dismissed.

CAFA vests this Court with diversity jurisdiction over the state-law claims. According to the Second Amended Complaint, Chen pleads only GBL claims, but she makes them "on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws." (SAC ¶ 193.)

Chen fails to state a cause of action under the GBL. She asserts claims under §§ 349 and 350 of the statute. Section 349 bans "[d]eceptive acts or practices in the conduct of any business, trade[,] or commerce or in the furnishing of any service in" New York. N.Y. Gen. Bus. Law. § 349(a). Meanwhile, § 350 bans "[f]alse advertising in the conduct of any business, trade[,] or commerce of in the furnishing of any service in" New York. Id. § 350. The standards under both provisions "are substantively identical." Gristede's Foods, Inc. v. Unkechauge Nation, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007).

To prove claims under the two provisions, "a plaintiff must demonstrate that '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" Id. (quoting Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)). Plaintiff need not show either fraudulent intent or justifiable reliance. Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 124 (2d Cir. 2017); Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 897 (N.Y. 1999). Here, Defendant raises challenges with regard to the first and third elements. For the reasons stated below, the Court finds that Chen insufficiently pleads the former and therefore declines to consider the latter.

Chen has failed to plausibly allege deceptive acts under the GBL. "'Deceptive acts' are defined as acts that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" Gristede's Foods, 532 F. Supp. 2d at 451 (quoting Maurizio, 230 F.3d at 522). "And in determining whether a reasonable consumer would have been misled by a particular

advertisement, context is crucial." <u>Fink v. Time Warner Cable</u>, 714 F.3d 739, 742 (2d Cir. 2013) (per curiam). No GBL claim lies "when the allegedly deceptive practice was fully disclosed . . . ." <u>Broder v. MBNA Corp.</u>, 722 N.Y.S.2d 524, 526 (1st Dep't 2001).

As stated above, Chen alleges two theories of deception. First, Chen argues that "[a]ny reasonable consumer would understand 'steak' to mean an intact cut of meat." (Opp'n at 4; <u>see also</u> SAC ¶ 52.) As Defendant notes, (Br. at 13 n.14), the Second Amended Complaint incorporates by reference three allegedly deceptive television advertisements, and the pleadings include links to the video segments. (<u>See</u> SAC ¶¶ 63 n.1, 74 n.2, 91 n.3.) A review of those segments reveals that a viewer sees zoomed-in pictures of the sandwich and wrap, with ground-meat patties. Chen does not dispute that the television advertisements show the products, but he argues that the advertisements "obscure the products' beef patties with actors' hands, sandwich breads, and text." (Opp'n at 5.) But, as shown below, the close-ups of the products are not obscured:



(<u>See, e.g.</u>. SAC ¶ 63 n.1, Fellow Steak-Lover Handshake Commercial at 00:16.)

Chen responds that "[a]ny visual cues as to the patties' true contents would . . . not be available to consumers listening to the television or their computer but looking elsewhere,"

15

"listening on the radio," or making the purchase in one of Defendant's stores. (Id.) The argument lacks merit. The pleadings focus on the advertisements themselves. (See SAC ¶ 103 (noting that Chen "was repeatedly exposed to and saw" the advertisements); see also Opp'n at 5 ("The advertisement should not be considered in conjunction with Defendant's ingredients statement, but on their own.").) The "primary evidence" in the GBL claim "is, of course, the advertising itself," Fink, 714 F.3d at 742—not hypothetical situations not pled in the Second Amended Complaint. The advertisements in the Second Amended Complaint fully disclose to the reasonable consumer that the "Angus steak" is a ground meat patty made with Angus beef. See Broder, 722 N.Y.S.2d at 526.

Second, Chen argues that Defendant's representations are deceptive because the beef patty contains additives, preservatives, and other ingredients. (See SAC ¶¶ 2, 29.) "[R]easonable consumer[s] acting reasonably under the circumstances" would interpret "Angus Steak" to mean only that the food product would contain some Angus beef. See Gristede's Foods, 532 F. Supp. 2d at 451. That is, the term "Angus Steak" sandwich does not mislead the reasonable consumer of a chain restaurant to believe that the meat patty contains only Angus beef. Had Defendant used terms such as "All-Meat Patty with 100% Angus Steak" or "All-Natural Angus Steak" (representations at least suggesting unadulterated meat patties), Chen's case would be different. Without other qualifications, "Angus Steak" guarantees just some Angus beef. A review of Defendant's ingredient list—a document integral to the Second Amended Complaint—shows that the patties at issue here contain "Angus Beef." (D.E. # 18-2 at 5.) Indeed, Chen conceded that the patties contained Angus beef at oral argument. Accordingly, the second theory of deception fails as a matter of law. The Court thus dismisses Chen's GBL claims.

\* \* \*

Because the Court dismisses the individual claims of each of the named plaintiffs, the Court lacks jurisdiction over the state-law class claims of the unnamed putative class members. See Derbaremdiker v. Applebee's Int'l, No. 12-CV-01058 (KAM), 2012 WL 4482057, at *9 n.9 (E.D.N.Y. Sept. 26, 2012), aff'd 519 F. App'x 77 (2d Cir. 2013) ("[A]lthough plaintiff asserts claims on behalf of potential class members that are predicated on other States' consumer protection laws, his complaint must be dismissed."); In re Citigroup Auction Rate Securities Litigation, 700 F. Supp.2d 294, 308 (S.D.N.Y. 2009) ("[C]ourts in this circuit have repeatedly held that, [i]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased. If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim."); see also Police and Fire Retirement System of the City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 112 n.22 (2d Cir. 2013) ("[T]he jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs.").

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: September 17, 2018
       Brooklyn, New York

                                                  s/Carol Bagley Amon
                                                  Carol Bagley Amon
                                                  United States District Judge